EL PUEBLO DE PUERTO RICO, peticionario, *v.* FELIPE BONI-
LLA ROMERO c/p FELO BONILLA y OTROS, acusados y
recurridos.

*Número:* CE-86-473          *Resuelto:* 10 de diciembre de 1987

*Rafael Ortiz Carrión, Procurador General* y *Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo; *Miguel A. Cochrán,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El Tribunal Superior de Puerto Rico, Sala de Ponce —mediante una extensa resolución a esos efectos(1) y fundándose principalmente en falta de credibilidad de la prueba del Ministerio Fiscal— ordenó la supresión tanto de la evidencia que fuera ocupada por agentes de la Policía de Puerto Rico al éstos arrestar, sin orden judicial previa, al recurrido Felipe Bonilla Romero el día 18 de septiembre de 1985, como de la evidencia que éstos ocuparon al otro día en la residencia de Bonilla Romero al diligenciar una orden de registro y allanamiento expedida por el Tribunal de Distrito, Sala de Ponce —Hon. Víctor Rodríguez Bou, Juez— a base de las declaraciones juradas prestadas ante dicho tribunal por dos agentes del orden público referentes las mismas a los hechos alegadamente ocurridos el día dieciocho.

Por razón de que el recurso de *certiorari* radicado por el Procurador General de Puerto Rico en revisión de la referida resolución contempla situaciones específicas dentro del campo del procedimiento criminal que nos brindan la oportunidad de orientar la profesión en general, una sala especial de verano expidió el mismo.(2)

I

Los hechos básicos necesarios para la solución del presente recurso surgen principalmente de las dos declaraciones juradas que ante el Tribunal de Distrito de Ponce prestaran el día 19 de septiembre de 1985 los agentes Caín Santiago Figueroa y Ángel L. Negrón Santiago; transcribimos a continuación las mismas:

---

(1) La resolución recurrida, emitida por el Hon. Juez Superior Arnaldo López Rodríguez, consta de cuarenta y cinco (45) páginas.

(2) Sala integrada por su Presidente el Juez Asociado Señor Rebollo López y los Jueces Asociados Señora Naveira de Rodón y Señor Hernández Denton.

DECLARACION JURADA DE AGTE. CAIN SANTIAGO FIGUEROA 10969

En *Ponce*, Puerto Rico, a —— de septiembre de 1985, ante este Tribunal comparece el declarante, mayor de edad y vecino de Yauco, P.R. y previo juramento conforme a la ley, declara:

QUE MI NOMBRE Y DEMAS CIRCUNSTANCIAS PERSONALES SON COMO ARRIBA SE EXPRESAN.

Por instrucciones del Sgto. Pedro F. Arévalo Echevarría 8-1523, Encgdo. de la Sección de Inteligencia y Asuntos Confidenciales de la Div. Drogas de Ponce, comencé una investigación relacionada con actividades ilegales que se llevan a cabo en la residencia del Sr. Felo Bonilla, la cual está ubicada en la Calle 42, PP-58, Urb. Jardines del Caribe, Ponce, Hora 8:30 A.M., *utilizando una guagua especial para vigilancias.* Me dirigí hasta el sector dnde [*sic*] está la residencia de Felo Bonilla y comencé una vigilancia a dicha residencia como a eso de las 9:30 A.M. pude observar que un vehículo Champ crema se estacionó en la calle que sube, hasta llegar a la Calle 42, casi en la esq. de la calle 41 y se dirigió a la residencia de Felo Bonilla, llamó y entró hasta la residencia donde se mantuvo por espacio de 5 minutos apróx., *que salió llevando en su mano una bolsa plástica pequeña transparente por lo que aparentaba ser de las que comúnmente utilizan las personas que se dedican al tráfico y consumo de la sustancia c/p heroína y cocaína.* Cuando este señor salió puso esa bolsa en dirección al sol y la chequeó y la guardó en el bolsillo de la camisa. Que el conductor de este vehículo dió [*sic*] retroceso y se marchó del lugar. *A eso de las 10:30 A.M., llegó al lugar un vehículo Mitsubishi, color blanco, tablilla 12-C-265, y se estacionó frente a la residencia de Felo bonilla [sic],* del mismo se bajó un individuo trigueño obscuro, pelo en forma de afro pequeño, de 5'6"–5'8" de estatura apróx., de 170 a 190 lbs. de peso apróx., *llamó hacia la residencia de Felo Bonilla, y através [sic] de los portones de la residencia de Felo Bonilla hablaron algo, Felo Bonilla, se separó de él hacia el interior de ésta y le trajo una bolsa plástica transparente similar a la anterior, pero de un tamaño mayor. Felo, se las [sic] entregó al individuo, éste las [sic] chequeó, y sacó de su bolsillo derecho del pantalón varios billetes, los cuales le entregó a Felo.*

El indivíduo aborda su vehículo y se marcha del lugar. *Solicité por radio-comandancia la relación de esta tablilla y en la relación éste aparece hurtado, por lo que me dirijo a la división para darle conocimiento al Sgto. Arévalo.* A eso de las 12:30 P.M., en unión al Agte. Angel L. [Negrón], éste conduciendo la misma guagua oficial, nos dirigimos a la Urb. Jardines del Caribe, para que éste me dejara allí en la parte de atrás de la guagua y seguir prestando dicha vigilancia. El Agte. Negrón, estacionó la guagua en un sitio desde donde yo podía tener buena visivilidad [sic] hacia el frente de la residencia de Felo, luego de estacionado el Agte. Negrón se fue a pié [sic]. *A eso de la 1:35 P.M., Felo Bonilla, sale de su residencia, portando en su cintura, lado izquierdo una pistola, procede a abrir la puerta del vehículo y antes de montarse con su mano derecha extrae la pistola de la cintura y entonces se monta en el vehículo, lo enciende y lo pone en marcha en dirección de la carretera principal osea [sic] la carretera 132, al pasar al lado de mi vehículo inmediatamente anoté la tablilla 33-J143 y procedí a llamar al Agte. Angel L. Negrón, informándole el hecho de que esta persona llevaba sobre su persona una pistola negra y que lo pusiera inmediatmente [sic] bajo arresto ya que es de mi conocimiento que éste no posee licencia para portar ninguna arma de fuego. En la información que pasé al Agte. Negrón, le informaba además de la tablilla, la descripción del vehículo* tan pronto él tomó la calle que conduce a la carretera principal me mobí [sic] al haciento [sic] del conductor con el propposito [sic] de seguirlo. Lo que hice. Puede [sic] observar cuando se dirigía por la carretera 132, hacia Peñuelas, *esta información se la iba trasmitiendo al Agte. Negrón,* quien ese momento me informó que me mantuviera en el semáforo que da a la entrada. A los varios minutos recibo una llamada de Negrón, donde me informa que se arrestó la persona y que se ocupó la pistola así como otra evidencia.

*Ya en la división examiné la evidencia y puede [sic] ver que era la misma pistla [sic] negra que llevaba cuando salió de su residencia. Que se le habían ocupado dos bolsas transparente [sic] similares a las que este señor entregó a la primera persona que hago mención en esta declaración y las cuales fueron sometidas al Laboratorio de la Policía al Sr. Mario*

*Tripari, quien entregó un certificado de Positivo de Heroína y Cocaína.* Se sometió el caso al Hon. Juez Prudencio Collazo Padín, quien determinó causa probable en dos casos de la Ley de Armas, Art[s]. 6 y 8 y dos casos de sustancias controladas y le imposo [*sic*] una fianza total de $57,000.00.

*Por lo antes expuesto y considerando los hechos expuestos ante usted por el Agte. Angel L. Negrón Santiago 0767, en su declaración jurada, tengo la convicción moral de que en la residencia del Sr. Felipe Bonilla Romero,* la cual se describe de la siguiente mantera [*sic*]:

Residencia construida de cemento pintada de blanco o blanco hueso, con rejas al frente un portón de rejas en la marquesina y otro portón de rejas a la entrada de la misma color blanco, tiene en el techo/rejas a la vuelta redonda como especie de terraza con rejas alrededor, al frente tiene verja de ladrillos y rejas también, además en el techo tiene una antena parabólica estilo radar.

Mirándola de frente por el lado derecho de la residencia colinda con una residencia de cemento pintada de blanco con rejas al frente color blanco con el número 57, al final de la calle hay una casa que no le pude leer el número.

*[S]e está violando la ley de Sustancias Controladas, al estarse guardando, almacenando y distribuyendo allí sustancias controladas,* por lo que muy respetuosamente solicito de este Hon. Magist [*sic*] que si de la forma y manera declarado por mi y el Agte. Negrón Santiago, encuentra que en dicha residencia se está violando la Ley de Sustancias Controladas, se sirba [*sic*] autorizar o expedir una orden de allanamiento para buscar en dicha residencia cualquier sustancia controlada que se encuentre allí en violación a la ley o cualquier otra cosa en violación a cualquier otro estatuto y si las ocupó [*sic*] las llevaré ante un magistrado sin dilación innecesaria.

QUE LO DECLARADO ES LA VERDAD Y NADA MAS QUE LA VERDAD

*AGTE. CAIN SANTIAGO FIGUEROA 10969*

Jurada y suscrita ante mi hoy día 19 de septiembre de 1985, hora 4:55 P.M. en Ponce, P.R.

*Affidavit* 7641 _____

LIC. VICTOR RODRIGUEZ BOU

DECLARACION JURADA DE AGTE. ANGEL L. NE-GRON SANTIAGO 0767

En Ponce, Puerto Rico, a —— de septiembre de 1985, ante este Tribunal comparece el declarante, mayor de edad y vecino de Villalba y previo juramento conforme a la ley, declara: QUE MI NOMBRE Y DEMAS CIRCUNSTANCIAS PERSONALES SON COMO ARRIBA SE EXPRESAN.

*Que el día 18 de septiembre de 1985, a eso de las 10:45 A.M., llegó a la División de Drogas el Agte. Caín Santiago 10969, e informó que mientras prestaba la vigilancia a la residencia del individuo Felipe Bonilla Romero, para un posible allanamiento, llegó a esa residencia un vehículo color blanco con tablilla 12-C-265, y que éste pidió la relación y este resultó ser hurtado.* Al o[í]r esto el Sgto. Arévalo 8-1523, nos di[o] instrucciones para que sali[é]ramos en la guagua oficial que tenía el Agte. Santiago y yo, para prestarle una vigilancia a la residencia de Felo Bonilla, pero esta vez iba yo conduciendo la guagua y el Agte. Santiago, como pasajero, que sal[i]mos de la Div. Drogas, como a las 12:30 P.M., que unas calles antes de llegar a la residencia de Felo Bonilla, detuve la guagua y el Agte. Santiago, se pasó a la parte de atrás de la guagua y yo seguí conduciendo y fui y me estacioné en un sitio estrátegico [*sic*]. El Agte. Santiago, desde la parte de atrás de la guagua podía ver con facilidad la parte del frente y principalmente la entrada de dicha residencia. Que le entregué las llaves de la guagua a Santiago y me fui a pie desde el lugar, no sin antes comunicarme por radio con el Sgto. Arévalo, e indicarle que me esperara en el Centro Comunal, que está cerca de la casa de Felo. Cuando llegué al Centro Comunal abordé el vehículo oficial marca Buick, que era conducido por el Agte. Campos, y de ese momento en adelante yo conduje ese vehículo, desde donde partímos [*sic*] por ca [*sic*] carretera 132, en dirección a la Urb. Las Delicias, para ver si podíamos localizar el vehículo reportado hurtado. Además de el [*sic*] Agte. Campos y yo, est[á]bamos en este vehículo los Sgtos. Arévalo y Ortiz. *Que a eso de [la] 1:40 P.M., más o menos recíbimos [sic] por radioteléfono una llamada de el [sic] Agte. Santiago, donde informaba que la tarjeta osea [sic] Felipe Bonilla Romero, donde [é]l prestaba la vigilancia había abordado un vehículo Trans-Am color negro y oro con tablilla 33-J-143, y que éste*

*llevaba una pistola negra en la cintura,* que al recibir esta llamada nos encontrabamos [*sic*] en la calle principal de la Urb. Las Delicias, el Agte. Santiago, nos informó que el vehículo se dirigía hacia la carretera 132, de Ponce a Peñuelas. Por lo que partímos [*sic*] hacia la carretera 132, para ver si dabamos [*sic*] con dicha tarjeta osea [*sic*] Felipe Bonilla Romero. Además de esto el Agte. Santiago, nos informó que lo pusiéramos bajo arresto. *Que encontramos a Felo, en su vehículo en un Garaje Texaco,* echándole combustible en la Carr. 132, de Ponce a Peñuelas. *Que llegamos allí y lo pusímos [sic] bajo arresto en el asiento delantero del vehículo Trans-Am, ocupé la pistola y el Agte. Campos, al momento de registrar a éste le ocupó dos bolsas plásticas transparente[s] conteniendo [sic] en su interior, una un polvo blanco y la otra un polvo crema de supuesta cocaína y heroína.* Que la pistola es marca Beretta, modelo 84-B, cal. 9 Short, 380 auto, serie B-74400Y, color negra, cargada con un magacine [*sic*] con 13 balas y un magacine [*sic*] adicional con 13 balas más, *además de la pistola había una cuchilla de 5" de hoja de largo y cabo de 6½" de largo, está cogida con un cuero color lila y un cordón de cuero adherido al cabo, todo esto dentro de la cartera de cuero color brown, de las llamadas mariconeras. La sustancia ocupada al Sr. Felipe Bonilla Romero, fue sometida al Lab. Criminal de la Policía de Ponce, donde el Químico Mario Tripari, analizó el contenido de ambas bolsas plásticas dando un certificado de Positivo de cocaína y heroína.* El caso fue llebado [*sic*] ante la presencia del Hon. Prudencio Collazo Padín, quien luego de escuchar la prueba determinó la existencia de causa probable, tanto en dos casos de sustancias controladas, como en los artículos 6 y 8 de la Ley de Armas de P.R., fijándole una fianza de $57,000.00, siendo ingresado en la Cárcel de Distrito de Ponce.

El fiscal Armstrog [*sic*], autorizó la radicación de estas denuncias.

QUE LO DECLARADO ES LA VERDAD Y NADA MAS QUE LA VERDAD

AGTE. AMGEL [*sic*] L. NEGRON SANTIAGO 0767

Jurada y suscrita ante mi *hoy 19 de sept. de 1985,* hora 4:55 P.M. en Ponce, P.R.

*Affidavit* 7642

LIC. VICTOR RODRIGUEZ BOU

(Énfasis suplido.) Anejo XVIII, págs. 37–40.

La orden de registro y allanamiento que expidiera el Tribunal de Distrito de Ponce, como consecuencia de las dos antes transcritas declaraciones juradas, fue diligenciada el mismo día 19 de septiembre de 1985 en horas de la noche. Los agentes del orden público ocuparon ese día en la residencia de Bonilla Romero cuatro bolsas plásticas conteniendo la droga narcótica conocida como cocaína, con un peso total de 140.26 gramos; una bolsa plástica conteniendo la droga narcótica conocida como heroína, con un peso de 181.13 gramos; una bolsa conteniendo picadura de marihuana, y una pistola no registrada. El recurrido Bonilla Romero fue acusado tanto por los hechos del 18 como del 19 de septiembre de 1985. En relación con los hechos del 19 de septiembre, fueron adicionalmente acusados la esposa de Bonilla Romero y tres otras personas que se encontraban en la residencia de éstos al momento del allanamiento. Los recurridos presentaron dos mociones de supresión de evidencia.

En cuanto a los hechos del 18 de septiembre alegaron, en lo pertinente, que:

> ... *los hechos que alega la Policía para justificar el arresto del imputado*, Sr. Bonilla Romero, sin previa orden ese día 18 de septiembre de 1985, . . . *son totalmente falsos*. Siendo falso[s] dichos hechos *no existía causa probable ni motivos fundados* para el arresto y el subsiguiente registro a su persona y vehículo de motor . . . . (Énfasis suplido.) Anejo XVIII, pág. 36.

Respecto a lo ocurrido el 19 de septiembre de 1985 se alegó, en lo pertinente, que:

> 1. . . . es insuficiente *la declaración jurada* que sirvió de base para la expedición de la orden de allanamiento *porque lo afirmado bajo juramento en la declaración jurada es falso*.
> 2. Que la *declaración jurada* que sirvió de base para la expedición de la orden de allanamiento *no indica la fecha en que el agente observó los alegados hechos delictivos*, por lo tanto,

no existe causa probable para su expedición. (Énfasis suplido.) Anejo XVIII, pág. 36.

La vista señalada por el tribunal de instancia, con el propósito de dilucidar las dos mociones de supresión radicadas, se extendió por un período de tres días. El Ministerio Fiscal descansó principalmente en el testimonio de los agentes Santiago Figueroa y Negrón Santiago.[3] La defensa presentó tanto prueba testifical como documental con el propósito de demostrarle al tribunal la falsedad de lo aseverado por los referidos agentes.

En relación con los hechos ocurridos el día 19 de septiembre de 1985 —los del allanamiento— el foro de instancia determinó que procedía la supresión solicitada por razón de que: la declaración jurada prestada ante el Tribunal de Distrito de Ponce por el agente Caín Santiago Figueroa era "fatalmente defectuosa, ya que ésta no informa ni de la misma se desprende la fecha en que dicho Agente observó los alegados hechos delictivos que narra en el referido documento"; que la declaración jurada prestada por el Agente Negrón Santiago no "salva el defecto de que adolece la declaración del Agente Caín Santiago"; que a pesar de que la declaración jurada prestada por este último agente expone prima facie hechos que de ser ciertos podrían dar base para la expedición de la orden de allanamiento, ello no podía ser tomado en consideración por cuanto la misma "adolece del defecto fatal de no informar la fecha de los mismos", y que la declaración prestada por el agente Caín Santiago Figueroa, a la luz de toda la prueba presentada, era indigna de crédito.

Este último argumento —el de no merecer credibilidad la versión brindada por los testigos del Ministerio Fiscal— fue el fundamento utilizado por el foro de instancia para resolver que igualmente procedía declarar con lugar la moción de su-

---

[3] En adición, presentó el testimonio de otros dos agentes del orden público.

presión radicada respecto a la evidencia ocupada el día 18 de septiembre como consecuencia del arresto de Bonilla Romero. Expresó el tribunal de instancia que:

> ... la prueba presentada por El Pueblo *resulta sumamente conflictiva, altamente sospechosa* y plagada de testimonio estereotipado ("dropsy testimony") en su modalidad del "acto-ilegal-a-plena-vista" en transacciones que por su naturaleza se amparan en la clandestinidad. También la referida prueba de El Pueblo *está saturada de testimonios con versiones irreales o altamente improbables. Las abismales contradicciones sobre hechos esenciales entre los mismos testigos de dicha parte fueron la orden del día.* (Énfasis suplido.)[4] Anejo XVIII, pág. 71.

## II

En la solicitud de *certiorari* que radicara el Procurador General de Puerto Rico plantea, como único señalamiento de error, que:

> Incurrió en error el Honorable Tribunal *a quo* al declarar con lugar dos mociones de supresión de evidencia, en los casos de epígrafe, y consiguientemente resolver que fue ilegal el registro del imputado Felipe Bonilla Romero en 18 de septiembre de 1985, y nula la orden de allanamiento librada y diligenciada contra la residencia de éste el día 19 de septiembre de 1985. Petición de *certiorari* de 18 de julio de 1986, pág. 9.

En la argumentación de la cuestión planteada, el Procurador General no discute, *de manera directa,* la cuestión de si el tribunal de instancia tenía o no *facultad para dirimir credibilidad* en la vista que sobre la supresión solicitada ce-

---

[4] El Juez López Rodríguez *específicamente determinó que no le daba crédito alguno* a la versión del agente Caín Santiago Figueroa de que él había prestado vigilancia a la casa de Bonilla Romero desde una "guagua van" estacionada cerca de la misma. Por el contrario, expresó que le daba entero crédito a una testigo de defensa, vecina de Bonilla Romero, quien declaró que durante el día 18 de septiembre de 1985 "ella no vio dicho vehículo *en ningún momento* en ese sitio". (Énfasis en el original.) Anejo XVIII, pág. 74.

lebrara. Se limita a argumentar —rechazando, en forma indirecta, que el tribunal de instancia tuviera la mencionada facultad— que dicho foro *se debió circunscribir* a resolver si los agentes de la Policía de Puerto Rico tenían o no "motivos fundados" para arrestar al recurrido Bonilla Romero el día 18 de septiembre de 1985 y si el Tribunal de Distrito de Ponce, en el momento de expedir la orden de allanamiento, tenía ante sí, a la luz de la "totalidad de las circunstancias", unos hechos que justificaban que se expidiera la referida orden; esto es, si existía o no causa probable para su expedición.[5]

Somos del criterio, por el contrario, que la correcta solución de *ambas* situaciones necesariamente requiere que nos enfrentemos a la cuestión de si el magistrado que preside una vista sobre supresión de evidencia puede dirimir credibilidad en la misma. Veamos por qué.

## III

A. *Los hechos del 18 de septiembre de 1985*

En cuanto al arresto efectuado por agentes de la Policía de Puerto Rico y la ocupación de la evidencia impugnada, el día 18 de septiembre de 1985 resulta aplicable lo resuelto por este Tribunal en *Pueblo* v. *Luzón*, 113 D.P.R. 315, 324 (1982). En el referido caso —citando con aprobación al comentarista J.A. Varon[6]— expresamos que:

> . . . El concepto de motivos fundados, consignado en la Regla 11 de Procedimiento Criminal, no es incompatible con la persecución del crimen, cuando actúen coordinada y concertadamente los agentes de la Policía. *A tal efecto, se ha sostenido*

---

(5) El Procurador General de Puerto Rico, una vez el auto de *certiorari* fue expedido, "sometió el caso" por los argumentos expuestos en la solicitud de *certiorari* que radicara.

(6) J.A. Varon, *Searches, Seizures and Immunities*, 2da ed., Indianapolis, Bobbs-Merrill Co., 1974, Vol. 1, pág. 128.

*que el conocimiento de cada agente —cuando trabajan cerca y se mantienen informados— es atribuible a los demás.* "Se puede establecer la existencia de causa probable para justificar un arresto sin orden, basado en información policiaca colectiva al momento del mismo, siendo innecesario que el oficial que lleva a cabo el arresto lo haga basándose únicamente en su conocimiento personal de las circunstancias. *Basta con que el agente de la Policía que inició la cadena de comunicaciones tenga información de primera mano.*" (Énfasis suplido.)[7]

En el presente caso tenemos que el agente Caín Santiago Figueroa declaró que, mientras prestaba vigilancia a la casa de Bonilla Romero desde una guagua estacionada cerca de la misma, él vio cuando éste abordó un automóvil portando sobre su persona lo que según su experiencia era un arma de fuego, esto es, una pistola. Declaró, en adición, que él tenía conocimiento personal de que Bonilla Romero no tenía licencia para portar armas de fuego. De manera pues que, *de ser cierto lo así declarado*, el agente Caín Santiago Figueroa tenía "motivos fundados" para arrestar a Bonilla Romero al amparo de las disposiciones del inciso (a) de la Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Véase, en adición, *Pueblo v. Del Río*, 113 D.P.R. 684 (1982).

De acuerdo a la declaración del agente Santiago Figueroa, esa información y la descripción del vehículo en el cual transitaba Bonilla Romero fue transmitida vía radio-teléfono por él a sus otros compañeros. Estos otros agentes, al amparo de lo resuelto en *Pueblo v. Luzón*, ante —y de ser cierto lo informado por el agente Santiago Figueroa— estarían facultados para arrestar a Bonilla Romero por cuanto el conocimiento que tenía el agente Santiago Figueroa sería atri-

---

[7] Ello es así debido a que, al igual que en los casos del "ciudadano informante" (*citizen informer*), se presume confiable la información que le brinda un policía a otro. *United States v. Ventresca*, 380 U.S. 102, 111 (1965); *People v. Galosco*, 149 Cal. Rptr. 407, 409–410 (1978).

buible a ellos. El registro que dichos agentes realizaron en la persona de Bonilla Romero, bajo esas circunstancias, *sería uno razonable* por cuanto el mismo se llevó a efecto con el propósito de ". . . ocupar armas que puedan ser empuñadas y utilizadas por el acusado para agredir a los agentes del orden público o para intentar una fuga, y para ocupar evidencia que de otro modo el arrestado podría destruir". *Pueblo* v. *Costoso Caballero,* 100 D.P.R. 147, 152–153 (1971); *Pueblo* v. *Dolce,* 105 D.P.R. 422 (1976); *Pueblo* v. *Del Río,* ante; *Pueblo* v. *Rivera Rivera,* 117 D.P.R. 283 (1986).

La situación, sin embargo, se complica a la luz de la determinación que hace el magistrado que presidió la vista de supresión de evidencia en el presente caso a los efectos de que la declaración del agente Caín Santiago Figueroa no le merece crédito alguno. De hecho —como surge del escolio núm. 4, *ante*— el Hon. Juez López Rodríguez específicamente determinó en la resolución que emitiera que no cree la versión del agente Caín Santiago Figueroa a los efectos de que estuvo prestando vigilancia a la casa de Bonilla Romero desde una guagua y que, por el contrario, le merece entero crédito la declaración de una vecina de éste de que ese día allí nunca estuvo estacionado vehículo alguno.

Esa determinación expresa del referido magistrado significaría que es falso lo expresado por el agente Santiago Figueroa a los efectos de que él observó a Bonilla Romero salir de su casa en un automóvil portando sobre su persona un arma de fuego ilegalmente. Habiendo sido ello determinado como cuestión de hecho —*y de sostenerse esa determinación en revisión*— tendríamos que los "motivos fundados" que dicho agente "tenía" para arrestar a Bonilla Romero eran inexistentes. Dicha situación, a su vez, tendría la consecuencia legal de que los agentes que arrestaron a Bonilla Romero no tenían motivos fundados para así hacerlo por cuanto el agente Santiago Figueroa no podía transmitirles lo

inexistente.[8] Véanse: *Whiteley* v. *Warden*, 401 U.S. 560, 568 (1971); *Pueblo* v. *Luzón*, ante.

De sostenerse que el magistrado en el presente caso estaba facultado para dirimir credibilidad y mantenerse su determinación de que la prueba de cargo presentada no es digna de crédito, la evidencia que le fuera ocupada el día 18 de septiembre de 1985 a Bonilla Romero al ser éste arrestado sería "el fruto del árbol venenoso", *Wong Sun* v. *United States*, 371 U.S. 471 (1963); *Pueblo* v. *Rey Marrero*, 109 D.P.R. 739, 746 (1980), y por lo tanto, inadmisible en evidencia. Art. II, Sec. 10, de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 1982.

## B. *Los hechos del 19 de septiembre de 1985*

Como surge de la relación de hechos realizada, el Tribunal de Distrito de Ponce expidió una orden de allanamiento contra la residencia del recurrido Felipe Bonilla Romero a base de las declaraciones juradas prestadas por los agentes Caín Santiago Figueroa y Ángel Negrón Santiago, quien fue uno de los agentes del orden público que arrestó a Bonilla Romero como consecuencia de la información brindada por el primero.

Como hemos visto, el tribunal de instancia declaró con lugar la moción de supresión radicada en cuanto al allanamiento realizado principalmente por dos razones, a saber: primero, que la declaración jurada prestada por el agente Santiago Figueroa es "fatalmente defectuosa" por razón de

---

[8] Debe mantenerse presente que los agentes que arrestaron a Bonilla Romero *lo hacen exclusivamente* a base de la información que les transmitió el agente Santiago Figueroa; esto es, ellos no hicieron ninguna observación personal que de alguna forma corroborara la información brindada por Santiago Figueroa a los efectos de que éste portaba sobre su persona un arma de fuego. Siendo ello así, necesariamente hay que analizar la situación exclusivamente a base de los alegados "motivos fundados" que tenía el "agente transmisor" de la información, esto es, del agente Caín Santiago Figueroa.

no expresar la fecha en que observa los supuestos hechos delictivos y, segundo, por razón de que dicha declaración es indigna de crédito.

**■■** Hemos resuelto que una orden de registro y allanamiento es nula cuando la misma es expedida a base de una declaración jurada que no contiene la fecha en que el deponente alegadamente observó la comisión del acto o la conducta delictiva. *Pueblo* v. *Rivera*, 79 D.P.R. 742 (1956); *Figueroa* v. *Tribunal de Distrito*, 72 D.P.R. 24 (1951). Ratificamos dicha norma en el día de hoy. La misma, entre otras cosas, garantiza que la orden de registro y allanamiento no será expedida respecto a alegados hechos delictivos observados en fecha remota, la razonabilidad de cuyo término será determinada de acuerdo a las circunstancias particulares presentes en cada caso. *Pueblo* v. *Tribunal Superior*, 91 D.P.R. 19 (1964); *Pueblo* v. *Rivera*, ante; *Pueblo* v. *Albizu*, 77 D.P.R. 896 (1955); *SGRO* v. *United States*, 287 U.S. 206 (1932).

**■** Es correcto que la declaración jurada que el agente Caín Santiago Figueroa prestara ante el tribunal que expidió la orden de allanamiento no contiene la fecha en que él alegadamente observó la conducta delictiva en la residencia de Bonilla Romero. *Ahora bien, dicha orden de allanamiento no fue expedida exclusivamente a base de esa declaración jurada; la orden se emitió a base de dos declaraciones juradas:* la del agente Santiago Figueroa y la del agente Negrón Santiago. *Una lectura conjunta de las dos declaraciones demuestra que la alegada conducta delictiva que alega el agente Santiago Figueroa haber observado en la residencia de Bonilla Romero ocurrió, sin lugar a dudas, el día 18 de septiembre de 1985. Ello tiene el efecto de evitar la nulidad de la orden expedida por ese motivo.* No podemos perder de vista, por otro lado, que ambas declaraciones *tam-*

*bién se complementan en cuanto al "contenido" de la alegada conducta delictiva.* Recordemos que el agente Santiago Figueroa declaró que observó al recurrido Bonilla Romero transferir a otras personas, a cambio de dinero, dos bolsas plásticas y que las mismas eran similares a las que fueron ocupadas —dando su contenido positivo de cocaína y heroína— por el agente Negrón Santiago y sus compañeros en posesión de Bonilla Romero al éste ser arrestado por ellos. *Lo aseverado de esa manera en ambas declaraciones —de ser ello cierto— constituiría a nuestro juicio causa probable suficiente para la expedición de la referida orden de allanamiento.* Véase *Pueblo* v. *Bogard,* 100 D.P.R. 565 (1972).

Respecto a estos hechos del 19 de septiembre, sin embargo, existe la misma complicación que en cuanto a los hechos del 18 de septiembre de 1985: la determinación expresa del tribunal de instancia de que el testimonio del agente Santiago Figueroa a los efectos de que él hizo estas observaciones desde una guagua estacionada frente a la residencia de Bonilla Romero no le mereció crédito alguno. De esa determinación de hecho ser sostenida por este Tribunal, procedería la supresión de la evidencia ocupada con motivo del allanamiento realizado al amparo de las disposiciones del inciso (f) de la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

Pasamos, en su consecuencia, a considerar la cuestión de si el magistrado que preside la vista sobre supresión de evidencia puede o no adjudicar credibilidad.

C. *Determinación de credibilidad en la vista sobre supresión de evidencia*

La Regla 234 de Procedimiento Criminal dispone:

### REGLA 234. ALLANAMIENTO; MOCIÓN DE SUPRESIÓN DE EVIDENCIA

*La persona agraviada por un allanamiento o registro ilegal* podrá solicitar del tribunal al cual se refiere la regla anterior la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro, o la devolución de la propiedad, por cualquiera de los siguientes fundamentos:

(a) Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.

(b) Que la orden de allanamiento o registro es insuficiente de su propia faz.

(c) Que la propiedad ocupada o la persona o sitio registrado no corresponde a la descripción hecha en la orden de allanamiento o registro.

(d) Que no había causa probable para creer en la existencia de los fundamentos en que se basó la orden de allanamiento o registro.

(e) Que la orden de allanamiento fue librada o cumplimentada ilegalmente.

(f) Que es insuficiente cualquier declaración jurada que sirvió de base a la expedición de la orden de allanamiento *porque lo afirmado bajo juramento en la declaración es falso, total o parcialmente.*

*El tribunal oirá prueba sobre cualquier cuestión de hecho necesaria para la resolución de la solicitud.* De declararse con lugar la moción, la propiedad será devuelta, si no hubiere fundamento legal que lo impidiere, y no será admisible en evidencia en ningún juicio o vista. La moción se hará cinco días antes del juicio a menos que no hubiere oportunidad para ello o que al acusado no le constaren los fundamentos de la moción, o que la ilegalidad de la obtención de la evidencia surgiere de la prueba del fiscal. (Énfasis suplido.) 34 L.P.R.A. Ap. II, R. 234.

■ Una simple lectura de la transcrita disposición legal es todo lo que se necesita para concluir que el magistrado que presida una vista sobre supresión de evidencia al amparo de la citada Regla 234 efectivamente está facultado para adjudicar o dirimir credibilidad en la misma. Ello es conse-

cuencia lógica e inescapable de los términos en que está concebida dicha disposición legal. Si el tribunal está facultado para oír prueba sobre "cualquier cuestión de hecho necesaria para la resolución de la solicitud" y uno de los fundamentos para declarar con lugar la misma precisamente lo es que "lo afirmado bajo juramento en la declaración [que sirvió de base para la expedición de la orden de allanamiento] es falso, total o parcialmente", resulta obvio que el tribunal tiene el poder para adjudicar credibilidad en dicha vista. Así lo hemos reconocido en el pasado. Véanse: *Pueblo* v. *Torres*, 80 D.P.R. 245, 247 (1958); *Pueblo* v. *Luciano Arroyo*, 83 D.P.R. 573, 584–585 (1961); *Laureano Maldonado* v. *Tribunal Superior*, 92 D.P.R. 381, 391 (1965); *Rodríguez Muñoz* v. *Jefe Penitenciaría*, 94 D.P.R. 201, 203 (1967). Ratificamos dicha norma en el día de hoy.

◼ Debe quedar claro, en adición, que si bien es cierto que la citada Regla 234 aparenta referirse exclusivamente a la vista de supresión relativa a casos de allanamientos, *no debe haber duda alguna que la referida norma es aplicable a toda vista de supresión que se celebre con el propósito de dilucidar la legalidad o razonabilidad de la ocupación de evidencia por parte de agentes del orden público.* Respecto a esta facultad no existe razón alguna válida en derecho para establecer diferencia entre una vista de supresión relativa a la ocupación de evidencia en un allanamiento y una evidencia ocupada como consecuencia de un arresto sin orden previa. *Cf. Wong Sun* v. *United States*, ante; *Pueblo* v. *Rodríguez Rivera*, 91 D.P.R. 456 (1964); *Pueblo* v. *Rey Marrero*, ante.(9)

---

(9) En dicho caso, este Tribunal resolvió que la citada Regla 234 de Procedimiento Criminal si bien parece referirse únicamente a prueba objetiva o material *también rige respecto a la supresión de testimonio* que de resultar inadmisible obligaría a la desestimación de los cargos y la absolución del acusado.

## IV

Reiteradamente hemos resuelto que este Tribunal no intervendrá con la apreciación y adjudicación de credibilidad que en relación con la prueba testifical haya realizado el juzgador de los hechos a nivel de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Dicha determinación, como es sabido, es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada ya que él fue quien oyó y vio declarar a los testigos. *Pueblo* v. *Cabán Torres*, 117 D.P.R. 645 (1986); *Laureano Maldonado* v. *Tribunal Superior*, ante.

En el presente caso, como hemos visto, el juez que presidió la vista sobre supresión de evidencia *expresamente* determinó que no le merecía crédito alguno el testimonio prestado por el agente Caín Santiago Figueroa, *testimonio que sirvió de base tanto para el arresto, sin orden, del recurrido Bonilla Romero el 18 de septiembre como para la expedición de la orden de allanamiento el 19 de septiembre de 1985.* Debe enfatizarse el hecho que el Procurador General de Puerto Rico no alega que el referido magistrado actuara movido por pasión, prejuicio, parcialidad y/o que incurriera en error manifiesto al así decidir.

Por otro lado, hemos examinado cuidadosamente la extensa resolución emitida por el Hon. Juez Arnaldo López Rodríguez en donde éste ofrece, en detalle, las razones en apoyo de su determinación de que el testimonio del agente Caín Santiago Figueroa es indigno de crédito. Si bien es cierto que entendemos que algunos de los fundamentos por él ofrecidos no son suficientes, por sí solos, para sostener la mencionada determinación, somos del criterio que una evaluación integral de dichos fundamentos sostiene la misma. No puede perderse de vista que fue dicho magistrado quien

tuvo ante sí los testigos y quien estuvo en mejor posición para apreciar el comportamiento de éstos mientras declararon y la forma en que lo hicieron, la naturaleza o carácter del testimonio prestado, etc. Regla 44(B) de Evidencia para el Tribunal General de Justicia, 32 L.P.R.A. Ap. IV; *Ortiz* v. *Cruz Pabón*, 103 D.P.R. 939, 947 (1975). Si a ello le añadimos, repetimos, que el Procurador General no impugna dicha actuación, forzoso es concluir que no tenemos fundamento alguno para intervenir con esa apreciación.

## V

Nuestra Constitución, en su Art. II, Sec. 10, *supra*, pág. 299, dispone:

> *No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.*
> No se interceptará la comunicación telefónica.
> *Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación*, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.
> *Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.* (Énfasis suplido.)

■■■ Siendo falsa la información que brindara por radio-teléfono el agente Caín Santiago Figueroa el día 18 de septiembre de 1985, los agentes que procedieron a arrestar, *sin más*, al recurrido Bonilla Romero no tenían "motivos fundados" para así hacerlo. *Pueblo* v. *Luzón*, ante; *Whiteley* v. *Warden*, ante. *La evidencia ocupada por dichos agentes como consecuencia del registro incidental a dicho arresto nunca podría ser admisible en evidencia. Ello es así, por cuanto siendo ilegal el arresto que precedió al registro, éste es igualmente ilegal. Únicamente cuando el arresto realizado es legal es que podemos entrar a considerar si el regis-*

*tro incidental al arresto es o no razonable.* Como expresara uno de los miembros de la Asamblea Constituyente, al discutirse las disposiciones de la transcrita Sec. 10 del Art. II de nuestra Constitución:

> SR. REYES DELGADO: Contra la ilegalidad no hay que garantizar nada. Lo ilegal es ilegal. Lo irrazonable pudiera ser que fuese legal y ser irrazonable. Por eso es que la garantía es contra registros, allanamientos irrazonables, porque en eso hay un margen de discreción, y son los tribunales los que tienen que decidir si se actuó con razonabilidad o no. Pero contra la ilegalidad no hay garantía. Lo ilegal es ilegal y no puede prevalecer en ningún sitio.[10]

De igual forma, siendo falsa la declaración que prestara el agente Caín Santiago Figueroa el 19 de septiembre de 1985 ante el magistrado que expidió la orden de allanamiento, no existía ". . . causa probable apoyada en juramento o afirmación . . ." para la expedición de dicha orden por lo que la evidencia ocupada como consecuencia del allanamiento realizado ese día 19 de septiembre resulta, *por mandato constitucional,* inadmisible en evidencia. Art. II, Sec. 10 de la Constitución del Estado Libre Asociado de Puerto Rico, *supra.*

Por los fundamentos antes expuestos, *se dictará sentencia confirmatoria de la resolución recurrida.*

El Juez Asociado Señor Negrón García concurre con el resultado sin opinión escrita.

---

[10] 3 Diario de Sesiones de la Convención Constituyente 1566 (1952).