# 2008 DTA 108

## TRIBUNAL DE APELACIONES
### REGIÓN JUDICIAL DE CAGUAS
### PANEL XII

ANGELO COLÓN ROSARIO
Demandante-Apelado

v.

GUADALUPE CALDERON VICENTE, VIDALIA PEREZ TORRES;
Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES QUE JUNTO COMPONEN
Demandados-Apelantes

Núm. KLAN-08-00678

San Juan, Puerto Rico, a 29 de agosto de 2008

Panel integrado por su Presidenta, la Juez Pesante Martínez,
el Juez Escribano Medina y la Juez Hernández Torres

Pesante Martínez, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos, el Sr. Guadalupe Calderón Vicente (en adelante, el "*demandado-apelante*") en el interés de obtener la revocación de la sentencia emitida por la Hon. Iris L. Cancio González, Jueza del Tribunal de Primera Instancia (en adelante, "*T.P.I.*"), Sala Superior de Caguas. Mediante esta sentencia se declaró ha lugar una demanda sobre cobro de dinero y daños y perjuicios en contra del apelante. El T.P.I. determinó que la resolución del contrato entre las partes fue causada por el incumplimiento del demandado-apelante al no haber solicitado los permisos necesarios para que la finca arrendada tuviera acceso a la Carretera Número Uno (1). El T.P.I. impuso al demandado-apelante a pagar al Sr. Ángelo Colón Rosario (en adelante, el "*demandante-apelado*") $11,207.09 por los gastos incurridos; $45,000 por pérdidas económicas; $70,000 por angustias

mentales y daños a su crédito; y $5,000 en honorarios de abogado por temeridad.

Oportunamente, el demandado-apelante presentó ante nos su escrito de apelación en el que le imputó al T.P. I. la comisión de seis errores y solicitó la revocación de la sentencia apelada. Adujo que erró el T.P.I.: (1) *"...cuando concluye que el demandante sufrió una pérdida económica e imputa la responsabilidad al demandado"*; (2) *"...cuando concluye que la pérdida económica es de $45,000"*; (3) *"...cuando impone al demandado el reembolso de $11,207.09 invertidos por el demandante en mejoras de bienes muebles e inmuebles e inventario para la operación del negocio establecido por el demandante"*; (4) *"...cuando impone al demandado el pago de $70,000 a favor del demandante como compensación por las angustias mentales y daño a su crédito, a pesar de la ausencia de prueba tanto médica como de crédito afectado"*; (5) *"...cuando impone al demandado el pago de $5,000 en honorarios de abogados y el pago de intereses a razón del 9% anual desde el 21 de julio de 2006 por temeridad"* y (6) *"...cuando incluye como determinación de hecho número uno que Vidalia Pérez Torres es esposa del demandante"*

Por su parte, el demandante-apelado replicó que sus daños económicos fueron ocasionados por el dinero invertido en el terreno arrendado, ya que se requería ponerlo en condiciones óptimas para iniciar la operación del negocio. Éste afirmó que se probó que él poseía una expectativa de ganancia que no se realizó por carecer la finca de acceso a la Carretera Número Uno (1). De la misma forma, el demandante-apelado sostuvo que durante el juicio se probó detalladamente sus gastos económicos de tal forma que quedaron probados sus daños. Arguyó que todas las alegaciones del apelante referentes a sus planillas de contribución sobre ingresos son especulativas.

Examinado los alegatos de las partes, determinamos que erró el T.P.I. al adjudicar al demandante-apelado una suma extremadamente alta consistente en el pago de $70,000 en concepto de daños mentales y a su crédito, al imponer honorarios de abogado e intereses por temeridad. Siendo así, modificamos la sentencia apelada.

**I**

Desde noviembre del 2005 hasta abril del 2006, el demandante-apelado tuvo un negocio de comida en el pueblo de Carolina. En marzo del 2006, se interesó en trasladar su negocio debido a que la localización que tenía se estaba perjudicando por la construcción de un elevado. Se interesó en el terreno perteneciente al demandado-apelante.

El 28 de marzo de 2006, las partes en este pleito suscribieron un contrato de arrendamiento. El objeto del contrato era un predio de terreno ubicado en la Carretera Número Uno (1), Km. 28.6, Barrio Río Cañas de Caguas. El espacio arrendado tenía dos accesos a la vía pública, uno por el lado norte con la Carretera Número Uno (1) y por el lado sur con la Carretera Ramal 795. El demandante-apelado arrendó el terreno para ubicar un *"trailer"* que se utilizaría para la venta de comidas y bebidas alcohólicas. Ambas partes acordaron que el canon de arrendamiento consistiría en el pago de $1,500 mensuales. Igualmente, las partes pactaron que la fianza consistiría en el pago de $1,500. El término estipulado para el arrendamiento fue seis meses. En el contrato de arrendamiento se dispuso que el arrendador acondicionaría el terreno para su uso por el arrendatario. No obstante, no fue hasta finales de mayo del 2006 que se terminó el trabajo de acondicionamiento del terreno debido a frecuentes lluvias.

El negocio empezó a operar el 5 de junio de 2006. Operó por un día y medio hasta que empleados del Departamento de Transportación y Obras Públicas le requirieron a ambas partes el permiso de acceso a la Carretera Número Uno (1). Al carecer de este permiso, la agencia instaló unas vallas de metal impidiendo el acceso a la vía pública por el lado norte. A consecuencia de lo anterior, el demandante-apelado tuvo que cerrar su negocio y solicitó la resolución del contrato. El demandante-apelado solicitó $7,500 por la inversión realizada y el apelante ofreció $2,000. En virtud de las divergencias antes mencionadas, el demandante-apelado presentó una demanda sobre cobro de dinero y daños y perjuicios en contra del demandado-apelante.

La prueba oral del demandante-apelado estuvo basada en su testimonio, el testimonio del Sr. Félix Camacho Martínez, contratista electricista, y el testimonio del Sr. Woldecrudes Cruz Torres, ingeniero de profesión para el Departamento de Transportación y Obras Públicas. El Sr. Camacho Martínez expresó que el 23 de mayo de 2006, realizó un trabajo de electricidad en el *"trailer"* del demandante-apelado por $600.00 dólares. El Sr. Woldecrudes Cruz narró que habló con el demandado-apelante sobre el problema de la carencia de permiso para acceder a la Carretera Número Uno (1) y que incluso le enviaron una notificación escrita. Señaló que tuvo que colocar unas vallas de seguridad para evitar el acceso ilegal a la vía pública. Declaró también que no se le había otorgado permiso alguno al demandado-apelante por ninguna de las carreteras principales. De la misma forma, el demandante-apelado presentó su testimonio en el que declaró cómo se llevo a cabo el contrato de arrendamiento e indicó que el demandado-apelante le había expresado que la localización del terreno arrendado era favorable para un negocio de comida. Igualmente, declaró que al momento de suscribir el contrato de arrendamiento le preguntó al apelante sobre los permisos requeridos en el negocio y que éste contestó que no había ningún problema. Afirmó que tenía la expectativa de trabajar los siete días de la semana hasta aproximadamente las 9:00pm. Asimismo, hizo un recuento de los gastos incurridos en la preparación del negocio, entre los cuales se encuentra: $1,500 correspondientes al pago de fianza se reembolsó $1,000 quedando una diferencia de $500; $1,500 de canon de arrendamiento para el primer mes; $150 en permisos del Municipio de Caguas; $600.00 correspondientes a una conexión eléctrica en el *"trailer"*; $2,335 aproximadamente referentes a un piso de cemento; $1,400 por la construcción de una verja; compró un regulador de gas por $120; invirtió en una carpa $3,000, pero el demandado-apelante le reembolsó el pago de la misma; gastó alrededor de $3,015 para preparar el trailer; pagó $430 en baños aunque le devolvieron $190.00 quedando una diferencia de $240, pagó $99 en el manejo de basura; y gastó aproximadamente 1,116.84 en comida, menús, cruzacalle, gas, entre otras cosas. Adicionalmente, realizó gestiones sobre varios permisos municipales. El T.P.I. calculó que sus gastos ascienden a $11,207.09. A consecuencia de lo anterior, alega se vio forzado a comenzar a trabajar como guardia de seguridad.

Por otra parte, el demandado-apelante presentó su testimonio en corte en el que alegó que el apelado no quiso esperar los permisos. De la misma forma expresó que anteriormente no conocía que fuera necesario algún permiso para tener acceso a la Carretera Número Uno (1).

## II

### A

El Tribunal Supremo de Puerto Rico constantemente ha expresado que en ausencia de error manifiesto, pasión, prejuicio o parcialidad, no se intervendrá a nivel apelativo con las determinaciones de hechos y adjudicación de credibilidad efectuadas por el Tribunal de Instancia. *Meléndez v. Asoc. Hosp. Del Maestro,* 156 D.P.R. 828, 863 (2002); *Trinidad García v. Chade,* 153 D.P.R. 280, 291 (2001); *Colón y otros v. K-Mart y otros,* 154 D.P.R. 510, 520 (2001); *Municipio de Ponce v. Autoridad de Carreteras,* 153 D.P.R. 01, 12 (2000); *Monllor Arzola v. Soc. Legal de Gananciales,* 138 D.P.R. 600, 610 (1995)

La Regla 43.2 de las de Procedimiento Civil de Puerto Rico, 32 L.P.R.A., Ap. III, en lo pertinente, dispone que *"[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el Tribunal Sentenciador para juzgar la credibilidad de los testigos".* Tomando como base esta norma, los foros apelativos no suelen intervenir ni alterar innecesariamente las determinaciones de hechos que formulan los tribunales de primera instancia luego de admitir y aquilatar la prueba que se presenta en el juicio. Véanse, *Meléndez v. Caribbean Int'l News,* 151 D.P.R. 649, 664 (2000); *Quiñones López v. Manzano Pozas,* 141 D.P.R. 139, 152 (1996).

Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. *Perez v. Rosado,* res. el 4 de junio del 2007, pág. 6, **2007 JTS 116**; *Argüello v. Argüello,* 155 D.P.R. 62, 79 (2001). La determinación de

credibilidad del tribunal sentenciador es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. *Argüello v. Argüello, supra*; *Pueblo v. Bonilla Romero*, 120 D.P.R. 92, 111 (1987).

Más aún, el juez ante quien deponen los testigos es quien tiene la oportunidad de verlos y observar su manera de declarar, apreciar sus gestos, titubeos, contradicciones, en síntesis todo su comportamiento mientras declara, factores que van formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. *Argüello v. Argüello, supra*, pág. 78 *"[L]a declaración de un testigo no contradicho sobre un hecho determinado, debe merecer crédito, a no ser que su versión sea físicamente imposible, inverosímil o que por su conducta en la silla testifical se haga indigno de crédito"*. *Miranda Soto v. Mena Eró*, 109 D.P.R. 473, 482 (1980).

Aunque, de ordinario, el foro apelativo no interviene con la apreciación de la prueba que hacen los foros judiciales de instancia, lo hará cuando un balance racional, justiciero y jurídico de la totalidad de la prueba y de los documentos que obran en autos lleva a conclusiones distintas a las del tribunal de instancia. *Negrón Rivera y Bonilla, Ex Parte*, 120 D.P.R. 61, 71 (1987).

Un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172, 181 (1985); *Pérez v. Hosp. La Concepción*, 115 D.P.R. 721, 728 (1984). No obstante, está claro que el arbitrio del juzgador de hechos es respetable, mas no absoluto. Por eso, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. Véase, *Krans Bell v. Kobo Santarrosa*, **2008 J.T.S. 11**; *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8, 14 (1987).

De otro modo, en el ejercicio de su facultad revisora, el foro apelativo se encuentra en igual posición que el foro de primera instancia en cuanto a evaluar la prueba pericial y documental ofrecida. Es por ello que, en lo que respecta a dicha evidencia, está facultado a adoptar su propio criterio en la evaluación de la misma. En cuanto a la prueba pericial, el Tribunal Supremo ha expresado que como foro apelativo, no estamos obligados a seguir indefectiblemente *"la opinión, juicio, conclusión o determinación de un perito o facultativo...y que todo tribunal está en plena libertad de adoptar su criterio propio en la apreciación y evaluación de la prueba"*. *Culebra Enterprises Corp. v. E.L.A.*, 143 D.P.R. 935, 952 (1997), citando a *Prieto v. Maryland Casualty Co.*, 98 D.P.R. 594 (1970) (otras citas omitidas); Véase, además, *Dye-Tex Puerto Rico, Inc. v. Royal Insurance Company of Puerto Rico*, 150 D.P.R. 658, 662-663 (2000).

**B**

En Puerto Rico rige el principio de libertad de contratación, según el cual las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que las mismas no sean contrarias a las leyes, a la moral ni al orden público. Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372. Estos criterios que integran el principio de libertad contractual son la única limitación que existe a la voluntad de las partes en cuanto a la naturaleza y clase de pactos, cláusulas y condiciones que pueden establecer. Cónsono con esta autonomía de la voluntad contractual, el Tribunal Supremo ha resuelto que los contratos son ley entre las partes, por lo cual éstas vienen obligadas a acatar lo estipulado. *Vázquez v. Izquierdo*, 162 D.P.R. 88, 98 (2004).

El contrato de arrendamiento es definido en los Arts. 1432 y 1433 del Código Civil. El arrendamiento puede ser de cosas o de obras o servicios, 31 L.P.R.A. sec. 4011. En el arrendamiento de cosas, una de las partes se obliga a dar a la otra el goce o uso de una cosa por tiempo determinado y precio cierto, 31 L.P.R.A. sec. 4012.

El contrato de arrendamiento comprende obligaciones bilaterales o sinalagmáticas; la obligación asumida

por cada uno de los contratantes tiene por causa la prestación que le ha sido prometida en cambio. *Del Toro Irizarry v. Blasini Gonzalez*, 96 D.P.R. 676 (1968). De no ejecutarse una de las prestaciones, la obligación correlativa cesa de tener causa. En el contrato de arrendamiento, la ejecución de las prestaciones no se da simultáneamente, debido a su carácter de contrato sucesivo. Cuando el arrendador pone al arrendatario en el goce pacífico de la cosa arrendada, es que surge la obligación recíproca del pago del canon convenido. Cuando el arrendador no procura al arrendatario el goce prometido, este último puede invocar la excepción del contrato no cumplido. Véase: Velázquez, *Las Obligaciones según el Derecho Puertorriqueño*, 1964, págs. 70-72. *Id.*

## C

La gestión judicial de estimación y valoración de daños es una difícil y angustiosa, al no existir un sistema mecánico que permita llegar a un resultado exacto con el cual todas las partes queden satisfechas y complacidas. *Blas Toledo v. Hospital Nuestra Sra. de la Guadalupe*, 146 D.P.R. 267, 339 (1998); *Rodríguez Cancel v. E.L.A.*, 116 D.P.R. 443, 451 (1985); *Urrutia v. A.A.A.*, 103 D.P.R. 643, 647 (1975). En relación con esta difícil y angustiosa labor, se ha reconocido que, de ordinario, los tribunales de primera instancia están en una mejor posición que los tribunales apelativos para evaluar la situación. Esto es consecuencia de que tienen contacto directo con la prueba que a esos efectos, presenta la parte que los reclama. *Blas Toledo v. Hospital Nuestra Sra. de la Guadalupe, supra*. El contacto con la prueba presentada en el proceso judicial de primera instancia y las impresiones derivadas de la apreciación visual del juez, es la razón básica para que en ausencia de un dictamen imponiendo una cuantía ridículamente baja o exageradamente alta, a la luz de la prueba sobre daños presentada, en nuestra función apelativa, implementemos la norma de abstención judicial fundada en criterios de estabilidad y de respeto a los tribunales de primera instancia. *Publio Díaz v. E.L.A.*, 106 D.P.R. 854, 868 (1978). Por razón de lo anterior, se promueve la norma de abstención judicial de las decisiones que a ese respecto emitan los tribunales de instancia a menos que se trate de un dictamen que conceda las cuantías ridículamente bajas o exageradamente altas. *Blas Toledo v. Hospital Nuestra Sra. de la Guadalupe, supra*; *Valdejuli Rodríguez v. A.A.A.*, 99 D.P.R. 917 (1971).

El derecho a ser compensado no puede derrotarse meramente por el carácter especulativo que en alguna medida supone el cómputo de daños. *Rivera v. Pitusa Inc.*, 148 D.P.R 695, 700; *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485, 510 (1985). Al medir los daños, el juzgador debe hacerlo a base de la prueba, procurando siempre que la indemnización no se convierta en una industria. *Atiles Moreu, Admor. v. McClurg*, 87 D.P.R. 865, 877 (1963).

Es preciso señalar que la parte que solicita la modificación de las sumas concedidas, viene obligada a demostrar la existencia de las circunstancias que hacen meritorio el que se modifiquen las mismas. *Canales Velázquez v. Rosario Quiles*, 107 D.P.R. 757 (1978); *Rodríguez Cancel v. E.L.A., supra*.

## D

Es norma reiterada que la imposición de honorarios de abogado sólo procede cuando una parte ha actuado con temeridad o frivolidad. Al respecto, el Tribunal Supremo ha resuelto que el propósito de la determinación de temeridad y la eventual imposición de honorarios de abogado es *"penalizar al litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito"*. *Santiago v. Sup. Grande, supra*, a la pág. 11; *Oficina de Ética Gubernamental v. Román González*, 159 D.P.R. 401 (2003), a la pág. 418; *Domínguez Vargas v. Great American Life Assurance Company of Puerto Rico, Inc.*, 157 D.P.R. 690 (2002).

Existirá temeridad cuando: (1) en la contestación a la demanda se niegue responsabilidad, pero ésta se acepte posteriormente; (2) la parte demandada se defienda injustificadamente de la acción; (3) se crea que la cantidad reclamada es exagerada y esa sea la única razón para oponerse a los reclamos del demandante, en lugar de admitir responsabilidad y limitar la controversia a la fijación de la cantidad reclamada; (4) el demandado se

arriesgue a litigar un caso del que se surja a todas luces su responsabilidad, y (5) cuando se niegue un hecho cuya certeza le consta a quien hace la alegación. *Oficina de Ética Gubernamental v. Román González, supra*; *Blás v. Hosp. Guadalupe*, 146 D.P.R. 267, 336 (1998); *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713, 718-719 (1987). El grado o intensidad de la conducta temeraria o frívola es el factor determinante para fijar la cuantía de los honorarios de abogado. *Oficina de Ética Gubernamental v. Román González, supra.*

La conducta temeraria que acarrea la imposición de honorarios de abogado, se refiere a *"una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia."* *Santiago v. Sup. Grande, supra*, a la pág. 12.; *Puerto Rico Oil Company, Inc. v. Dayco Products, Inc.*, res. el 6 de abril de 2005, **2005 J.T.S. 47**, a la pág. 12; H. Sánchez, *Rebelde Sin Costas*, 4(2) Boletín Judicial 14 (1982).

De otra parte, la determinación de si una parte ha actuado o no con temeridad descansa en la sana discreción del tribunal. Por lo cual, los tribunales revisores intervendrán, únicamente, cuando surja de tal actuación un claro abuso de discreción. *Santiago v. Sup. Grande, supra*; *Puerto Rico Oil Company, Inc. v. Dayco Products, Inc., supra*, a la pág. 12. Reiteradamente hemos resuelto que no existe temeridad cuando lo que se plantea ante el tribunal de instancia son planteamientos complejos y novedosos que no han sido resueltos en nuestra jurisdicción. Tampoco existe temeridad en aquellos casos en que el litigante actúa de acuerdo a la apreciación errónea de una cuestión de derecho y no hay precedentes establecidos sobre la cuestión, *Santiago v. Sup. Grande, supra*; *Cabanillas v. Gelpí*, 65 D.P.R. 945, 949 (1946), o cuando existe alguna desavenencia honesta en cuanto a quién favorece el derecho aplicable a los hechos del caso. *Santiago v. Sup. Grande, supra*, a la pág. 12; *Cándido Oliveras, Inc. v. Universal Ins. Co.*, 141 D.P.R. 900, 936 (1996); *Elba A.B.M. v. U.P.R., supra*; *Santos Bermúdez v. Texaco P.R., Inc.*, 123 D.P.R. 351 (1989); *Santaella Negrón v. Licari*, 83 D.P.R. 887, 903-904 (1961).

### III

En el caso ante nos, determinamos que erró manifiestamente el T.P.I. al conceder al demandante-apelado una partida de daños mentales y daños a su crédito exageradamente alta. De la transcripción de la prueba oral se desprende que el demandante-apelado sufrió daños mentales mínimos relacionados al efecto de los infortunios sufridos por el cierre de su negocio. Asimismo, de la prueba y las alegaciones de las partes podemos concluir que el crédito del demandante-apelado se vio afectado no sólo por la imposibilidad de continuar con la operación del *"trailer"*, sino por asuntos previos como las pérdidas económicas sufridas por un negocio anterior. En virtud de ello, disminuimos esta partida e imponemos al demandado-apelante el pago de $10,000 en daños mentales y daños al crédito del demandante-apelado.

Respecto a los honorarios de abogado e intereses por temeridad, determinamos que abusó de su discreción el foro de instancia al imponer los mismos. El demandado-apelante no ha actuado con temeridad; éste intentó compensar al demandante-apelante; no ha actuado con contumacia y terquedad; ni ha provocado dilaciones ni inconvenientes durante el juicio. Por ende, revocamos la adjudicación de esta partida.

En cuanto a la determinación concerniente a que la Sra. Vidalia Pérez Torres es esposa del demandado-apelante, consideramos que es inmaterial discutir el error. El T.P.I. únicamente consideró responsable al demandando-apelante en su carácter personal. A consecuencia de lo anterior, confirmamos la determinación del T.P.I.

Por lo demás, le brindamos deferencia al dictamen del foro de instancia, pues fue éste quien tuvo ante sí toda la prueba referente a los gastos incurridos y la expectativa de ganancias del demandante-apelado. El demandado-apelante no rebatió con su prueba los daños adjudicados relacionados con la pérdida de ingresos del negocio y los daños económicos sufridos en la preparación del mismo. Consideramos adecuadas las partidas provistas por el T.P.I.

Por los fundamentos antes expuestos, modificamos la sentencia del Tribunal de Primera Instancia, que declaró con lugar una demanda en cobro de dinero y daños y perjuicios instada por el demandante-apelado. Se le conceden al demandante-apelado $10,000 correspondientes a daños mentales y daños a su crédito; 11,207.09 por gastos incurridos en la preparación del negocio y $45,000 por la pérdida económica previsible.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. María E. Pérez Ortiz
Secretaria del Tribunal de Apelaciones