# 2007 DTA 116

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE ARECIBO**

MARITZA BENÍTEZ RAMÍREZ
Demandante-Apelada

v.

FÉLIX A. LÓPEZ CALDERÓN
Demandado-Apelante

Núm. KLAN-07-00087

San Juan, Puerto Rico, a 19 de septiembre de 2007

Panel integrado por su Presidente, el Juez Martínez Torres, la Juez
Cotto Vives y el Juez Miranda De Hostos

Cotto Vives, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Félix A. López Calderón comparece ante nos para solicitar que revoquemos una sentencia emitida por el Tribunal de Primera Instancia, que declaró con lugar la demanda presentada por la demandante, la señora Maritza Benítez Ramírez. En consecuencia, resolvió que a cada una de las partes le corresponde un 50% de participación en los bienes de la sociedad legal de bienes gananciales, excepto en ciertos bienes que todavía quedaban sin distribuir entre éstos.

Con el beneficio de la transcripción de la prueba oral y del alegato de la parte apelada, procedemos a resolver el recurso en sus méritos. Ponderadas las alegaciones de ambas partes y en consideración a los fundamentos que a continuación expondremos, se confirma la sentencia apelada.

### I

Félix A. López Calderón y Maritza Benítez Ramírez contrajeron matrimonio el 22 de marzo de 1984 bajo el régimen de bienes gananciales. Las partes se divorciaron por la causal de abandono, mediante sentencia del 21 de agosto de 1995. Durante la vigencia del matrimonio, adquirieron diversos bienes muebles e inmuebles, deudas, derechos e intereses de los que dispusieron parcialmente.

El divorcio entre éstos dio lugar a dos pleitos independientes, uno de alimentos y el que nos ocupa, de división de bienes gananciales, presentado este último en febrero de 1996 por la Sra. Benítez. Luego de varios

incidentes procesales, el 30 de enero de 2001 se confeccionó el informe de conferencia con antelación al juicio. Durante el proceso, las partes expresaron al tribunal el deseo de adjudicar los inmuebles a cada uno de los ex-cónyuges, lo cual se hizo mediante sentencia del 23 de junio de 2005. El inmueble sito en la Urbanización Hacienda La Monserrate se adjudicó a la demandante, quien lo ocupa con la hija de ambos, mientras que aquél donde ubica la corporación Manatí Pediátrico, Inc., localizado en la Urbanización Atenas del municipio de Manatí, fue adjudicado al demandado.

A solicitud de las partes, se nombró un contador partidor para ayudar en la división de los bienes, con la particularidad de que éste fuese abogado. Para esa función, se contrataron los servicios profesionales del Lcdo. Luis Nazario Maldonado.

Luego de sometido el informe de liquidación de la sociedad de bienes gananciales del contador partidor, se celebró la vista en su fondo los días 3 y 5 de abril y el 31 de mayo de 2005. Las partes estipularon varios documentos, entre éstos, el informe del contador partidor y la resolución emitida en el caso de divorcio y alimentos, fechada el 16 de diciembre de 1998, civil núm. CD95-0333. En cuanto al informe del contador partidor, sólo se estipuló el documento, no su contenido.

La prueba testifical consistió, además del testimonio de las propias partes, con el testimonio del contador partidor. El informe rendido por este último no fue vinculante para las partes, por lo que fue impugnado por la demandante durante el juicio. Específicamente, impugnó lo concerniente a que en el informe rendido por éste no se tomaron en consideración los depósitos y los gastos de las cuentas corporativas de Manatí Pediátrico, Inc.

Desfilada toda la prueba en el caso, el TPI emitió la sentencia apelada, en la que declaró con lugar la demanda presentada por la Sra. Benítez. En consecuencia, resolvió que a cada una de las partes le corresponde un 50% de participación en los bienes de la sociedad legal de bienes gananciales. Sobre los bienes que todavía quedaban sin distribuir entre las partes y sobre los cuales las partes no tenían una participación del 50%, el tribunal a *quo* le adjudicó a la demandante lo siguiente:

"1) el 50% del sobrante de los depósitos a la cuenta de la corporación ganancial Manatí Pediátrico, Inc., o sea la cantidad de $90,413.68.

2) $38,044.85 por concepto de cargos realizados por el demandado a su tarjeta de crédito contra las cuentas de la corporación ganancial Manatí Pediátrico posterior a la radicación de la demanda de divorcio, extinta la sociedad legal de gananciales y vigente una comunidad de bienes entre las partes.

3) el 50% de los ingresos de la renta por la utilización del consultorio médico del inmueble sito en la Urbanización Atenas, o sea la cantidad de $59,500.

4) el 50% de los ingresos de renta del local contiguo al consultorio médico del inmueble sito en la Urbanización Atenas, o sea la cantidad de $29,750.

5) $8,005.25 por concepto de deficiencias en la participación de activos de la demandante.

6) el 50% del dinero en efectivo que ingresaba diariamente en la corporación ganancial Manatí Pediátrico, Inc. hasta junio de 2005, o sea la cantidad de $130,000."

El foro apelado resolvió que, debido a lo antes expuesto, el demandando vendrá obligado a pagar a la demandante la cantidad total de $281,940.55. Asimismo, le ordenó disolver la corporación Manatí Pediátrico, Inc. -tal y como había sido ordenado previamente por ese tribunal y acordado por las partes según surge de la minuta del 29 de mayo de 2000- sin perjuicio de que el demandado pueda continuar sus gestiones profesionales

bajo una nueva entidad corporativa o como persona natural. Finalmente, por entender que la parte demandada ha sido temeraria en la tramitación de esta causa de acción, le impuso la cantidad de $20,000 por concepto de honorarios de abogado.

Inconforme, el apelante, señor López Calderón, acude ante nos mediante el presente recurso en el que alega que el Tribunal de Primera Instancia incidió al:

"1. *formular determinaciones de hechos que no están sostenidas por ninguna prueba y adjudicarle a la demandante la cantidad de $38,044.85.*

*2. al conceder a la demandante la mitad del dinero que el doctor López ganó luego del divorcio, en contra del derecho, la justicia, y la admisión de la demandante que no rindió ningún servicio en el consultorio común.*

*3. al sancionar una división de gananciales donde una parte asume todas las deudas y no se le concede crédito por ello.*

*4. al concluir que los ingresos de Manatí Pediátrico ascendieron a la cifra propuesta por la demandante, $748,779.52 cuando se probó que no todo ese dinero correspondía a ingresos.*

*5. al realizar su inventario y avalúo final.*

*6. al encontrar al demandado incurso en temeridad y al imponerle el pago de $20,000 por ese concepto.*"

## II

Es de conocimiento general que la sociedad legal de bienes gananciales es el régimen matrimonial favorecido por nuestro ordenamiento jurídico y tiene como causa, no el ánimo de lucro, sino la consecución de los fines particulares del matrimonio. *Int'l. Charter Mortgage Corp. v. Registrador*, 110 D.P.R. 862 (1981). Durante la existencia de la sociedad legal de bienes gananciales, los cónyuges son codueños y coadministradores de la totalidad del patrimonio matrimonial, sin distinción de cuotas. *Montalván v. Rodríguez*, 161 D.P.R. ___ (2004), **2004 J.T.S. 48**.

De otra parte, la disolución del matrimonio provoca automáticamente la extinción de la sociedad legal de bienes gananciales debido a que la causa de esta institución se desvanece ante la rotura del vínculo civil entre los cónyuges. A estos efectos, el Art. 105 del Código Civil, 31 L.P.R.A. sec. 381, dispone que *"[e]l divorcio lleva consigo la ruptura completa del vínculo matrimonial y la separación de propiedad y bienes de todas clases entre los cónyuges."*

El Tribunal Supremo ha reconocido que, en la práctica, la liquidación de los bienes comunes entre los ex-cónyuges no es necesariamente contemporánea a la disolución del vínculo matrimonial. *Montalván v. Rodríguez, supra; Calvo Mangas v. Aragonés Jiménez*, 115 D.P.R. 219 (1984). De este modo, se ha establecido que, una vez disuelta la sociedad legal de bienes gananciales, surge entonces una comunidad de bienes compuesta por todos los bienes del haber antes ganancial, en la cual cada partícipe posee una cuota independiente e alienable con el correspondiente derecho a intervenir en la administración de la comunidad y a pedir su división. *Montalván v. Rodríguez, supra.*

La referida comunidad de bienes se rige, a falta de contrato o disposiciones especiales, por las normas dispuestas en los Arts. 326 al 340 del Código Civil, 31 L.P.R.A. secs. 1271-1285, referentes a la figura de la comunidad de bienes. Se trata de un patrimonio en liquidación que se rige por normas distintas a las de la sociedad legal de bienes gananciales y existe hasta que se liquida finalmente la referida sociedad. La comunidad de bienes puede extenderse indefinidamente porque la acción para liquidar la cosa común nunca prescribe. No

obstante, los ex-cónyuges no están obligados a permanecer en comunidad. Arts. 334 y 1865 del Código Civil, 31 L.P.R.A. secs. 1279 y 5295. Véase, además, *Montalván v. Rodríguez, supra.*

Existe una comunidad de bienes cuando la propiedad de una cosa o de un derecho pertenece de modo *pro indiviso* a varias personas. Art. 326 del Código Civil, *supra*. En Puerto Rico, el tipo de comunidad que regula el Código Civil es la llamada comunidad romana, o *condominium iuris romani*, en la cual cada titular tiene una cuota ideal o alícuota de la cosa. Se presume que dichas cuotas son iguales y que la participación de los comuneros será proporcional, tanto en los beneficios, como en las cargas. Art. 327 Código Civil, 31 L.P.R.A. sec. 1272.

Sabido es que el uso de la cosa común por uno de los comuneros no debe impedir el uso de ésta por los demás copartícipes, conforme a su derecho. Art. 328 del Código Civil, 31 L.P.R.A. sec. 1273. Por ello, se prohíbe el uso de los bienes comunes en beneficio exclusivo de uno de los copropietarios. *Soto López v. Colón*, 143 D.P.R. 282 (1997). A estos efectos, el Tribunal Supremo resolvió, en *De la Fuente v. A. Roig Sucrs.*, 82 D. P.R. 514 (1961), que un comunero no puede usar o disfrutar de manera exclusiva de un bien comunitario sin pagar a los demás comuneros por dicho beneficio privativo.

Del mismo modo, con relación a la comunidad de bienes *post* ganancial, el Tribunal Supremo ha expresado que, durante la existencia de ésta, ninguno de los ex cónyuges puede tener el monopolio de ella. *Soto López v. Colón, supra*. Por esta razón, si sólo uno de los cónyuges mantiene el control y uso de los bienes de la comunidad, el otro cónyuge tiene un derecho superior, como comunero, entre otras cosas, a que su ex cónyuge le pague una suma líquida específica periódica. Permitir el uso exclusivo de la cosa en común por uno de los partícipes no sólo es ilegal, sino que choca con el sentido de la justicia, por lo cual se ha prohibido el monopolio del uso de la cosa común por uno o varios titulares. *Díaz v. Aguayo*, 162 D.P.R. ___ (2004), **2004 J.T.S. 148**.

Por otro lado, la liquidación de la sociedad legal de gananciales comprende todas las operaciones necesarias para determinar la existencia de gananciales y en caso afirmativo su división por partes iguales entre ambos cónyuges, o sus sucesiones en interés. A esta cantidad o valor final a ser dividido por mitad, se llega previas deducciones y reintegros a cada uno de aquellos bienes que le corresponden a titulo privativo, así como las responsabilidades imputables al acervo común. La liquidación puede resumirse en tres operaciones: (1) formación de inventario con avalúo y tasación; (2) determinación del haber social o balance líquido a partir; y (3) división y adjudicación de los gananciales. *Rosa Resto v. Rodríguez Solís*, 111 D.P.R. 89 (1981). El inventario es la base de todo el proceso, ya que es una relación detallada de los activos y pasivos de la comunidad en el momento de la disolución, acompañada de su tasación. *Rosa Resto v. Rodríguez Solís, supra.*

Nuestro Código Civil, en sus Arts. 1316 al 1322, 31 L.P.R.A. secs. 3691-3697, dispone las normas generales para la liquidación y adjudicación de la sociedad legal de bienes gananciales. Específicamente, el Art. 1317 del Código Civil, 31 L.P.R.A. sec. 3692, provee el mecanismo para restituir el desplazamiento de bienes de una masa a la otra, sin que ello cambie la naturaleza de origen de dichos bienes. Éste expresamente dispone que *"[e]l inventario comprenderá numéricamente, para colacionarlas, las cantidades que habiendo sido pagadas por la sociedad legal de gananciales, deban rebajarse del capital del marido o de la mujer...".* También indica que traerá a colación el importe de las donaciones o enajenaciones que deban considerarse ilegales o fraudulentas, con sujeción al Art. 1313 de este código.

Esta norma permite, dentro del marco legal que hemos descrito, que la sociedad recupere cualquier pago que haya hecho en beneficio de una masa privativa durante el matrimonio. Con esto se protege la titularidad original del bien y lo mantiene en la masa correspondiente, sin perjudicar al patrimonio que sufragó el gasto o realizó el pago que no le correspondía hacer en propiedad. Así, si un cónyuge o la sociedad destina fondos comunes para el pago de una deuda privativa, dicho acto no convierte al bien en ganancial, sólo da derecho a la restitución, vía reintegro, reembolso o recompensa, de la cuantía adelantada a favor del cónyuge propietario.

*Vélez Cordero v. Medina*, 99 D.P.R. 113 (1970).

De otra parte, el Art. 1319, 31 L.P.R.A. sec. 3694, dispone que *"[p]agadas las deudas y las cargas y obligaciones de la sociedad, se liquidará y pagará el capital del marido y la mujer hasta donde alcance el caudal inventariado"*. Mientras que el Art. 1320 establece que el caudal de la sociedad de gananciales estará constituido por el remanente, una vez se hayan hecho las deducciones en el caudal inventariado. 31 L.P.R.A. sec. 3694.

### III

En su primer señalamiento de error, el apelante alega que incidió el TPI al formular unas determinaciones de hechos que no están sostenidas por la prueba y al adjudicarle a la demandante la cantidad de $38,044.85. Argumenta que la señora Benítez Ramírez no presentó prueba alguna para demostrar que el doctor López Calderón pagara sus gastos personales con dinero de la corporación, sino que toda la prueba que escuchó el tribunal sostiene lo contrario.

Del récord ante nos surge que el TPI tomó la decisión de otorgarle un crédito a la parte demandante por la cantidad de $38,044.85 debido a que el demandado no refutó la alegación de la demandante de que esa suma correspondía a gastos personales del demandado y que éstos fueron cargados a la cuenta de la corporación. El doctor López no produjo prueba fehaciente de recibos u otra prueba que sostuviera su posición de que los gastos reclamados pertenecían a la corporación; simplemente se limitó a negar que sus gastos personales hubiesen sido cargados a la cuenta de la corporación. *Com. Vec. Pro-Mej., Inc. v. J.P.*, 147 D.P.R. 750 (1999); *Reece Corp. v. Ariela Inc.*, 122 D.P.R. 270 (1988); *Henríquez v. Consejo Educación Superior*, 120 D.P.R. 194, 210 (1987). Durante su testimonio, al ser contrainterrogado sobre este asunto, el demandado-apelante contestó lo siguiente:

*"P  Y también de esos $38,000 que se hicieron en gastos personales, usted lo único que indicó que podría ser utilizable para la oficina y que usted lo cargó a su tarjeta personal, que se pago de ahí, fue una computadora.*

*TESTIGO:*

*R  Está partiendo de una premisa falsa, porque esos no son gastos personales y tengo las pruebas de todos los gastos ahí, o sea.*

*P  Está bien.*

*R  Esos no son gastos personales, son gastos de la oficina. El único anejo que se hizo fue que una computadora que se compró, que la tarjeta de la oficina no tenía esa cantidad para prestar, se hace con una tarjeta mía y se paga con un cheque de la oficina esa cantidad.*

*P  Si, eso fue exactamente. Eso fue... Sin embargo, todos esos cheques que están en el 'cash register' se hicieron de las cuentas de Manatí Pediátrico.*

*R  Y son gastos de Manatí Pediátrico, no son gastos personales.*

*P  Lo cierto es que al día de hoy han pasado diez años, de hecho, se cumplen diez años en agosto de esta división, y al día de hoy usted no ha sometido un sólo recibo, ni un sólo cheque suyo personal de esos gastos, pagando esos dineros.*

*R  Porque esos no son gastos personales, son gastos de la oficina.*

*P  Pero la pregunta es clara. Que si...*

*SR JUEZ:*
*La pregunta es si se ha sometido prueba sobre eso, ¿si, no?*

*TESTIGO:*
R    No se ha pedido, yo la tengo ahí...

*SR JUEZ:*
*No.*

*TESTIGO:*
R    ...documentada, todos los gastos hechos que eran gastos de la oficina. Y los tengo ahí. Si los quiero yo los tengo. No se han pedido en ningún momento.

*SR JUEZ:*
*Esta bien, ya está.*

*LCDA. ESTEBAN:*
P    Bien. Lo cierto es que usted siempre mantuvo las cuentas de Manatí Pediátrico separadas de las cuentas personales.

R    Si.

P    ¿Todo el tiempo?

R    Si. ■

De hecho, cabe mencionar que de los autos del caso, así como de la T.P.O., surge que el demandado-apelante tenia asignado un salario como empleado de la corporación Manatí Pediátrico de aproximadamente $2,950. Era de ahí que el demandado-apelante tenía que sufragar sus gastos personales y no de las tarjetas de crédito de la corporación. De haber sido estos gastos de la corporación, tenían que haber sido evidenciados.

Por otro lado, el testimonio del contador partidor confirmó lo alegado por la señora Benítez Ramírez de que los gastos personales del demandado-apelante fueron estipulados por las partes en el informe de conferencia con antelación al juicio. Este testimonio le mereció credibilidad al TPI.

Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. *Argüello v. Argüello,* 155 D.P.R. 62, 79 (2001): *Rolón v. Charlie Rental, Inc.* 148 D.P.R. 20, 33 (1999). La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. *Id.; Pueblo v. Bonilla Romero,* 120 D.P.R. 92 (1987). El juez sentenciador, ante quien deponen los testigos, es quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. *Argüello v. Argüello, supra.* "[L]a declaración de un testigo no contradicho sobre un hecho determinado, debe merecer crédito, a no ser que su versión sea físicamente imposible, inverosímil o que por su conducta en la silla testifical se haga indigno de crédito". *Miranda Soto v. Mena Eró,* 109 D.P.R. 473 (1980); *Alicea v. Sucn. F. Gil Rivera,* 87 D.P.R. 789 (1963); *Villaronga, Com. v. Tribl. de Distrito,* 74 D.P.R. 331 (1953).

Ante la normativa antes expuesta y tomando en consideración que tanto el testimonio del contable-partidor

como el de la señora Benítez Ramírez le merecieron credibilidad al TPI, resolvemos que el primer error no fue cometido.

## IV

Por estar íntimamente relacionados, discutiremos en conjunto el segundo y tercer señalamiento de error. En su segundo error, el apelante aduce que incidió el TPI al conceder a la demandante la mitad del dinero que el doctor López ganó luego del divorcio en contra del derecho, la justicia y la admisión de la demandante que no rindió ningún servicio en el consultorio común. Indica que no se opone a que se le conceda una renta a la demandante debido a que él se mantuvo ejerciendo en un edificio que era propiedad de los dos. Sin embargo, no está conforme con la determinación de dicho foro de concederle a la demandante la mitad de las ganancias de la corporación, luego del divorcio. A su vez, alega en el tercer señalamiento de error que incidió el tribunal a *quo* al validar una división de gananciales donde una parte asume todas las deudas y no se le concede crédito por ello.

Del análisis que hemos efectuado de este asunto surge que el TPI resolvió, —basado en la credibilidad que le mereció el testimonio de la demandante, así como en la prueba sometida en el caso— que a la señora Benítez Ramírez le corresponde el 50% de las ganancias de la corporación. Para llegar a esta conclusión, el tribunal *a quo* específicamente determinó como hechos probados los siguientes: (1) que la parte demandada ha estado en posesión de la mayoría de los activos y bienes de la extinta sociedad legal de bienes gananciales; (2) que el demandado no había distribuido el dinero, las ganancias de capital, inversión e ingresos de los negocios del matrimonio, tal y como habían acordado; (3) que, debido a que todos los cargos que realizó la parte demandada a partir de la fecha del divorcio habían sido con cargo a los ingresos de la corporación —de la cual la demandante era la co-propietaria—, a ésta le correspondía un crédito por la cantidad pagada en exceso a su participación desde la fecha del divorcio hasta la disolución de la comunidad y a los activos; (4) que el demandado no presentó evidencia de los gastos incurridos, tanto en el inmueble sito en el Condominio Santa Ana como en la corporación; (5) que no evidenció los pagos recibidos de la propiedad sita en Urbanización Atenas, que alberga la corporación Manatí Pediátrico, Inc. ni las alegadas pérdidas sufridas, debido a que no proveyó los contratos, los nombres ni las direcciones de los arrendadores; (6) que no presentó evidencia de las alegadas pérdidas de la corporación; (7) que no controvirtió el informe del contador-partidor en cuanto al ingreso de las rentas; (8) que gravó de manera unilateral el inmueble que alberga la corporación sito en la Urbanización Atenas, el cual provocó que la mensualidad aumentara de $1,000 mensuales a $1,600; (9) que, además, éste se adjudicó unilateralmente las ganancias en efectivo que ingresaban a la corporación, las cuales habían sido determinadas previamente por el tribunal en $100 —caso núm. CD195-0333— diarios durante más de 10 años. Este último inciso lo discutiremos en detalle más adelante en esta sentencia.

Es un principio jurídico sostenido el que postula que toda sentencia está acompañada de una presunción de corrección. *Vargas v. González*, 149 D.P.R. 859 (1999); *Cortés Piñeiro v. Sucesión A. Cortés*, 83 L.P.R. 685 (1961). Dicho precepto va unido al hecho de que los jueces de instancia son quienes están en mejor posición de aquilatar la prueba. Por tal razón, la apreciación que éstos hagan de la evidencia desfilada en los procedimientos judiciales ante sí merece gran respeto y deferencia por parte de los foros apelativos. *Pueblo v. Miranda Ortiz*, 117 D.P.R. 188 (1986).

Como corolario de los postulados antes reseñados, se ha resuelto que en ausencia de error manifiesto, prejuicio, parcialidad o pasión, los foros apelativos no intervendrán con dicha apreciación de la prueba. *Benítez Guzmán v. García Merced*, 126 D.P.R. 302 (1990); *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8 (1987); *Pueblo v. Miranda Ortiz, supra*; *Valencia, Ex Parte, supra*; *Rodríguez Cancel v. A.E.E.*, 116 D.P.R. 443 (1985). Así, pues, este Tribunal no debe intervenir en las determinaciones de hechos de los foros de instancia, salvo en las circunstancias antes mencionadas, sustituyendo así el criterio del juzgador ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su demeanor. *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172 (1985); *Pérez Cruz v. Hospital La Concepción*, 115 D.P.R. 721 (1984); *Vélez v. Secretario de*

*Justicia*, 115 D.P.R. 533 (1984); *Ramos v. Caparra Dairy, Inc.*, 113 D.P.R. 357 (1982).

En el caso de autos no hay asomo de error manifiesto, prejuicio, parcialidad o pasión, por lo que estamos impedidos de intervenir con la apreciación de la prueba, la cual llevó al TPI a efectuar las determinaciones de hechos antes mencionadas. En resumen, el apelante no presentó prueba que demostrara los supuestos gastos y pérdidas sufridos, así como tampoco derrotó la presunción de corrección de las determinaciones de hechos efectuadas por el tribunal *a quo*. *"La obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en la cuestión en controversia"*. Regla 10 (B) de Evidencia, 32 L.P.R.A. Ap. IV, R. 10 (B).

De otra parte y retomando el inciso número nueve (9) antes mencionado, el demandado-apelante alega que es ilógico que ahora tenga que darle a la demandante el 50% de los $100 que le fueron imputados como ingreso —por concepto de deducibles del seguro médico recibidos en la oficina diariamente— y los cuales fueron considerados para el cómputo de la pensión alimentaria de su hija en el caso de divorcio. Respecto a esta alegación, es necesario aclarar que este caso es independiente al caso de divorcio y, por consiguiente, del de pensión alimentaria. En aquel caso, el TPI hizo sus cómputos a base de la prueba desfilada en la vista y las alegaciones de las partes. Debido a que dicho caso es uno distinto y separado al de división de bienes gananciales, no nos corresponde determinar si la decisión estuvo o no correcta, por lo que no intervendremos con la misma.

La división de bienes gananciales se rige bajo unos criterios distintos a los considerados en el caso de pensión alimentaria. Si ahora en este caso, el TPI entendió que los $100 imputados al demandado son parte de los ingresos de la corporación, es inescapable concluir que a la demandante le corresponde el 50% de éstos como co-propietaria de la misma. No obstante, esto no es óbice para que, en caso de que el demandado entienda que la división de bienes gananciales tuvo una repercusión en la cuantía de su pensión alimentaria o que la misma fue fijada de manera incorrecta, solicite una revisión ante el Tribunal de Primera Instancia. Siendo así, dicha alegación debe plantearse en el caso de divorcio y no en el de división de bienes gananciales. El TPI en este caso lo que hizo fue tomar conocimiento del caso de divorcio a los efectos de calcular los ingresos de la corporación —sin duda tiene facultad para así hacerlo— y aplicar las normas sobre división de bienes gananciales.

Por otro lado —y como parte del segundo señalamiento de error—, el demandado sostiene que es injusto que tenga que darle a la demandante la totalidad de los ingresos producidos por él en su consultorio producto de su único esfuerzo cuando ésta no hizo aportación alguna. De manera errónea cita, en apoyo de su contención, jurisprudencia que establece la norma de que, una vez disuelto el matrimonio, los ingresos de un ex- cónyuge producidos por su esfuerzo y trabajo, son privativos. Nos parece que el demandado confunde los ingresos generados por la corporación, los cuales son gananciales, con los generados por él como empleado de ésta —los cuales constituyen su salario— que son privativos. En este caso, las partes eran los únicos dos accionistas de la corporación (con un 50% de las acciones), por lo que el tribunal *a quo* está obligado a dividir por partes iguales los ingresos generados por ésta hasta su disolución. ■ En ningún momento, el tribunal hace referencia a los ingresos generados por el demandado como empleado de la corporación, es decir, su salario, el cual es independiente y separado de los ingresos de la corporación como ente jurídico.

Es imprescindible destacar el principio o regla general en cuanto a que las corporaciones poseen una personalidad jurídica distinta y separada de la de sus accionistas, directores y oficiales. Como bien explica el Tribunal Supremo: *"el hecho de que la corporación como ente jurídico sólo puede actuar a través de personas naturales, meramente explica una realidad. Lo que tiene importancia y consecuencia jurídica, sin embargo, es que esa actuación de sus directores en beneficio del patrimonio corporativo es un esfuerzo corporativo y no uno personal. Pretender lo contrario equivaldría a descorrer el velo corporativo."* Sucn. Santaella v. Secretario, 96 D.P.R. 442, 51-52 (1969). Por lo tanto, concluimos que errores números dos (2) y tres (3) no se

cometieron.

## V

En su cuarto señalamiento de error, el apelante impugna la decisión del TPI de concluir que los ingresos de Manatí Pediátrico, Inc. ascendieron a la cifra propuesta por la demandante de $748,779.52 cuando se probó que no todo ese dinero correspondía a ingresos.

Hemos revisado el récord y la transcripción de la prueba oral del caso y de los mismos surge que las partes en el informe de conferencia preliminar entre abogados estipularon que en las cuentas de la corporación se habían depositado hasta diciembre de 1998 un total de $748,779.52. Esta cifra se divide en $284,735.89 en el Banco Central Hispano y $464,043.63 en el Banco Popular de Puerto Rico. ■

Tal hecho fue corroborado por el testimonio del contador partidor, quien, al ser interrogado sobre el hecho de la estipulación de los depósitos de la corporación, declaró lo siguiente:

"*LCDA. ESTEBAN:*
*Bien. Ahora bien, también en el informe de conferencia con antelación al juicio se hizo una tabla específicamente de los depósitos realizados en la cuenta del Banco Central Hispano. Estamos en la página 14 del informe. Y eso fue por estipulación entre las partes.*

*R   ¿Qué fueron depósitos que se hicieron a la cuenta?*

*P   Eso es así.*

*R   Si, correcto.*

*P   Okey. Y que eso fue objeto de estipulación por que lo dice el informe?*

*R   Sí, si están estipulados. Los depósitos que se hicieron en las cuentas están estipulados.*

*P   Bien. ¿Y eso suma $284,735.89 sólo en esa cuenta del Banco Central Hispano, cuneta numero 0016401829?*

*LCDA. AHMAD:*
*Señoría, en cuanto a la tabla de los depósitos, que se hizo un comentario sobre que estaba estipulado, que en el informe no está estipulado. Si está estipulado en otro sitio, o en...*

*SR. JUEZ:*
*Sí, el informe de conferencia está estipulado.*

*LCDA. AHMAD:*
*No, pero ella habló de estipulaciones entre las partes. Esa está en la teoría de la compañera.*

*SR. JUEZ:*
**No, pero está estipulado.**

*LCDA. ESTEBAN:*
**Está estipulado.**

*SR. JUEZ:*
*Está estipulado.*

*LCDA. ESTEBAN:*
*Y firmado y admitido por la licenciada Villanueva.*

*TESTIGO:*
**Si, están estipulados. Los depósitos, porque eran depósitos a la cuenta.**

*SR. JUEZ:*
*Está estipulado.*

*LCDA. AHMAD:*
*Verificaré más tarde porque esta página me da la impresión que es en la teoría de la parte demandante.*

*LCDA. ESTEBAN:*
**Bueno, es que independientemente que sea teoría, se puso al lado: "Estipulado", y ése fue el informe que se sometió.**

*LCDA. AHMAD:*
**Ah, sí, bueno. O sea, que ahí es que surge, está en la teoría de ella, pero está estipulado.**

*TESTIGO:*
**Sí.**

*[...]*

*P   Y quedó estipulado que esos depósitos de Manatí Pediátrico de esa cuenta del Banco Popular, además de las anteriores sumaban $464,046.63. Y se pone específicamente en ese informe que no existe controversia sobre esos depósitos.*

*R   Unjú.*

*P   Estamos correctos?*

*R   Correcto.*

*P   Además, hay un detalle de los retiros y gastos operacionales, según el contable del demandado, hasta diciembre del '98, que es precisamente esos dos exhibits que hemos sometido, Exhibit 2a y 2b. ¿Estamos en lo correcto?*

*R   No, ahí estoy... No se de qué estamos hablando en el... ¿Cómo fue?*

*P   De los gastos.*

*R   ¿Está hablando de los gastos?*

*P   Sí, porque están incluidos aquí los gastos también, 'Gastos según contable 'check register' '. Estamos específicamente en la página 15 y 16. Entonces, se cubren todos los gastos, retiros de la cuenta del Banco Central, y retiros del Banco Popular, de ambas cuentas, cuánto sumaban el total de los retiros y cuánto eran*

*los gastos, según el contable en la última columna. Y entonces, se incluyen desde abril del '95, fecha en que se radicó la demanda de divorcio. Solicitamos que se tome conocimiento judicial de eso.* " (Énfasis nuestro.) ■

Como norma general, el Tribunal Supremo de Puerto Rico ha resuelto reiteradamente que una estipulación suscrita por las partes y aceptada por el tribunal, que finaliza un pleito o un incidente dentro del pleito, constituye un contrato de transacción que las obliga. Art. 1709 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4821. Véase, además, *Negrón Rivera y Bonilla, Ex Parte*, 120 D.P.R. 61 (1987); *Sucn. Román v. Shelga Corp.*, 111 D.P.R. 782 (1981). A estos efectos, el Art. 1233 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3471, dispone que si los términos de un contrato son claros y no dejan lugar a duda sobre la intención de los contratantes, deberá respetarse el sentido literal de sus cláusulas. Los términos de la estipulación que obliga a las partes en este caso son claros. A tenor con lo discutido anteriormente, las cantidades estipuladas por la demandante y el demandado constituye un contrato de transacción y, por lo tanto, ambas partes están obligadas por éste. El apelante no puede negarse a cumplir con lo que se obligó.

Desde otra perspectiva, la actuación de la parte apelante en este momento, resulta ser contraria a la norma de que a nadie le es lícito ir contra sus propios actos. Esta doctrina forma parte del principio general de Derecho que ordena proceder de buena fe en la vida jurídica. Pues la conducta contradictoria no tiene lugar en el campo del Derecho y debe ser impedida para así proteger la confianza depositada por los terceros en actos previos. *Int. General Electric v. Concret Builders*, 104 D.P.R. 871, 876-877(1976). De conformidad con la regla de que nadie puede ir contra sus propios actos, "*... una pretensión contradictoria con la propia conducta es inatendible y ha de ser, si se traduce en una actuación judicial, desestimada.*" Diez Picaso, *La Doctrina de los Propios Actos*, Ed. Bosch, Barcelona, 1963, pág. 217. El demandado-apelante no puede pretender revocar las estipulaciones hechas en el informe de conferencia con antelación a juicio bajo el supuesto de haber tenido unas pérdidas y gastos que no demostró.

Tomando en consideración la normativa antes expuesta y que las partes estipularon la cantidad de los depósitos entrados a la cuenta de la corporación, concluimos que el señalamiento de error número cuatro (4) no se cometió. Conforme a lo anteriormente establecido, se hace innecesario discutir el quinto señalamiento de error. El inventario y avalúo efectuado por el tribunal estuvo basado en la prueba documental estipulada por las partes y en los testimonios que fueron creídos por el TPI.

## VI

En su sexto señalamiento de error, el apelante alega que el TPI incurrió en error al encontrarlo incurso en temeridad y al imponerle el pago de $20,000 por ese concepto.

Por último, en cuanto a la imposición de honorarios por temeridad, es necesario indicar que la misma es discrecional. *Raluan Corp. v. Feliciano*, 111 D.P.R. 598 (1981). No obstante, la Regla 44.1(d) de Procedimiento Civil, 32 L.P.R.A., Ap. III, R. 44.1, es clara en el sentido de que cuando una parte ha procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado. Determinada la existencia de temeridad, la condena de honorarios es imperativa. Una partida de honorarios de abogado concedida por un Tribunal de Primera Instancia no se variará en apelación a menos que la misma sea excesiva, exigua o constituya un abuso de discreción. *Ramírez Anglada v. Club Cala de Palmas*, 123 D.P.R. 339 (1989). En el caso de autos, no encontramos que el foro *a quo* haya abusado de su discreción al imponerle al demandado el pago de $20,000 por concepto de honorarios de abogado por temeridad. El tribunal basó su decisión en el hecho de que el demandado negó gran parte de las alegaciones, y en ningún momento manifestó su deseo de dividir los bienes con la demandante, ni permitió una co–administración dilatando así el presente caso innecesariamente durante más de 10 años. Siendo así, concluimos que el TPI no cometió el sexto error apuntado.

Con los pronunciamientos efectuados, concluimos que ninguno de los seis errores señalados por la parte

apelante fueron cometidos.

## VII

A tenor con los fundamentos antes expuestos, confirmamos la sentencia apelada.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones