ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| GILBERTO RICARDO DÍAZ BUENO<br><br>Apelante<br><br>v.<br><br>ANA CECILIA RÍOS PÉREZ<br><br>Apelada | TA2026AP00025 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2023CV01033<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de abril de 2026.

Comparece Gilberto Ricardo Díaz Bueno (señor Díaz Bueno o apelante), mediante escrito de apelación y nos solicita nuestra intervención para revocar la *Sentencia* emitida el 26 de septiembre de 2025 y notificada el día 30 siguiente, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). En el referido pronunciamiento, se declaró No Ha Lugar la Demanda sobre un contrato de compraventa, desahucio, cobro de dinero, y enriquecimiento injusto, incoada por el apelante. En el mismo dictamen, el TPI declaró Ha Lugar la Reconvención presentada por Ana Cecilia Ríos Pérez (señora Ríos Pérez o apelada). Posteriormente, el 8 de diciembre de 2025, notificada al día siguiente, el foro primario declaró No Ha Lugar la Reconsideración presentada por el apelante.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

**I.**

El caso de epígrafe tuvo su origen el 2 de febrero de 2023, cuando el señor Díaz Bueno, instó una *Demanda*.[1] El demandante indicó que la

---

[1] Véase, Entrada Núm. 1, del expediente digital del caso SJ2023CV01033 en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).

señora Ríos Pérez se obligó a pagar $89,000.00 por un inmueble ubicado en la Urbanización Puerto Nuevo, San Juan, Puerto Rico. En apretada síntesis, el señor Díaz Bueno señaló que la demandada inició y firmó un borrador de Escritura sobre el precio acordado. En cuanto a los pagos, el demandante señaló que la demandada le abonó directamente $25,000.00, y que pagó otros $19,000.00, según evidenciado en el Pagaré al Portador.[2] Por consiguiente, el demandante reclamó a la señora Ríos Pérez un balance pendiente de $45,000.00 en este negocio jurídico sobre el bien inmueble en controversia.

Luego de varios incidentes procesales, el 9 de mayo de 2023, la señora Ríos Pérez interpuso su *Contestación a la Demanda Enmendada y Reconvención*.[3] En síntesis, la señora Ríos Pérez señaló que la cuantía adeudada del pagaré ascendía a $21,439.15. Añadió que pagó dicha suma dineraria y otros $25,000.00 a favor de la adquisición de la propiedad. Así las cosas, finalmente alegó que la suma pendiente asciende a $42,560.85, distinto a los $45,000.00 que reclamó el demandado. La señora Ríos Pérez expresó que el demandante se negó a recibir el pago por $42,560.85, pues reclamó un total adeudado mayor. Como parte de su escrito, la demandada incluyó una *Reconvención*. En su reclamo, solicitó el pago de $10,000.00 por concepto de gastos y honorarios de abogado, y $10,000.00 por concepto de gastos innecesarios y angustias mentales.

Subsiguientemente, el 22 de mayo de 2023, el demandante presentó su *Réplica a "Reconvención"*.[4] Indicó que la demandada se obligó a realizar una serie de pagos y que se negó a cumplir con los términos acordados sobre pagos escalonados y calendario de pago. Por otro lado, el señor Díaz Bueno insistió en que el contrato entre las partes no quedó perfeccionado.

---

[2] Véase, Entradas 10-12, SUMAC TPI. Inicialmente, la reclamación incluyó como parte codemandada al señor Ángel Álvarez Lau, tenedor del Pagaré Hipotecario. Luego de la entrega del Pagaré Hipotecario, el demandante relevó al señor Álvarez Lau de la causa de acción. El 3 de abril de 2023, notificada el día 5 siguiente, el foro primario dictó *Sentencia Parcial* por desistimiento voluntario. Posteriormente, el 30 de marzo de 2023, el demandante presentó su *Demanda Enmendada*.

[3] Véase, Entrada 17, SUMAC TPI.

[4] Véase, Entrada 23, SUMAC TPI.

Solicitó al foro primario que declarara No Ha Lugar la Reconvención y que condenara a la demandada al pago de intereses, costas, gastos y honorarios de abogado.

El 27 de septiembre de 2023, el foro primario celebró una vista. En su *Minuta*,[5] transcrita el día 29, el TPI concedió 20 días a las partes para sostener conversaciones transaccionales y para la culminación del descubrimiento de prueba.

Transcurridos varios eventos procesales, el 2 de abril de 2024, el foro primario emitió y notificó una *Sentencia*.[6] Determinó la inexistencia de controversias materiales, por lo que dispuso del asunto por la vía sumaria, según peticionado por el demandante.[7] Entre otras cosas, ordenó el lanzamiento de la demandada.

El 9 de abril de 2024, la demandada incoó una *Moción de reconsideración y/o relevo de sentencia por error y falta de debido proceso de ley*.[8] Se amparó en la Regla 49.2 de las de Procedimiento Civil, 32 LPRA Ap. V, y señaló que no tuvo oportunidad de presentar su oposición a la sentencia sumaria conforme a derecho por lo que solicitó el relevo de la sentencia bajo el fundamento de error, inadvertencia, sorpresa y/o negligencia excusable.

Así las cosas, el 2 de mayo de 2024, notificada el mismo día, mediante *Resolución*,[9] el foro primario dejó sin efecto su determinación anterior.

Subsiguientemente, el 28 de mayo de 2024, la señora Ríos Pérez consignó en el Tribunal, mediante cheque de gerente, la cantidad de $42,400.00.[10] Rogó el fin de la controversia.

---

[5] Véase, Entrada 36, SUMAC TPI.
[6] Véase, Entrada 47, SUMAC TPI.
[7] Véase, Entrada 42, SUMAC TPI. *Solicitud para que se dicte sentencia conforme las alegaciones admitidas por la parte demandada.*
[8] Véase, Entrada 48, SUMAC TPI.
[9] Véase, Entrada 49, SUMAC TPI.
[10] Véase, Entrada 53, SUMAC TPI. *Moción consignando pago total de precio de compraventa.*

Luego de intercambiadas ciertas mociones entre las partes, mediante *Sentencia*,[11] emitida el 5 de agosto de 2024 y notificada al día siguiente, el TPI declaró nuevamente Ha Lugar la demanda y mantuvo la orden de desalojo en contra de la demandada. Entre otras cosas, determinó la existencia de rentas adeudadas y ordenó su pago, impuso $7,000.00 por concepto de honorarios y gastos del pleito y el pago $7,000.00 como fianza en apelación.

Ulteriormente, el 10 de octubre de 2024, la demandada instó su recurso ante el Tribunal de Apelaciones. En síntesis, impugnó la determinación sobre el desahucio y las rentas impuestas por el foro primario.[12]

En su decisión,[13] emitida el 22 de noviembre de 2024 y notificada el día 25 siguiente, un panel hermano concluyó que el foro primario incidió al declarar con lugar la moción de sentencia sumaria presentada por el demandante. Determinó la existencia de hechos en controversia, por lo que devolvió el caso al foro primario y apercibió que la reconvención aún queda por atenderse.

Devuelto el caso al TPI y luego de varios escritos incoados por las partes, el 8 de mayo de 2025, notificada al día siguiente, mediante *Resolución interlocutoria*,[14] el foro primario declaró No Ha Lugar la consignación de la demandada. El TPI mantuvo la fecha del juicio para el 11 de junio de 2025 para el desfile de prueba y determinar el monto real de la deuda.

El 15 de mayo de 2025, la señora Ríos Pérez consignó $170.85 para dar como satisfecha la cantidad de $42,560.85 inicialmente admitida como deuda por la demandada.[15] Atribuyó la diferencia a un error matemático en el cálculo del balance adeudado.

---

[11] Véase, Entrada 59, SUMAC TPI.
[12] Véase, Entrada 64, SUMAC TPI.
[13] Véase, Entrada 68, SUMAC TPI.
[14] Véase, Entradas 89-90, SUMAC TPI.
[15] Véase, Entrada 91, SUMAC TPI.

El 21 de abril de 2025, el demandante impugnó la consignación y la describió como parcial y tardía.[16]

Luego de varias incidencias procesales, el 2 de julio de 2025, se celebró el Juicio en su fondo.[17] Tanto el señor Díaz Bueno como la señora Ríos Pérez prestaron su testimonio y fueron contrainterrogados.

El 26 de septiembre de 2025, notificada el día 30 siguiente, el TPI declaró No Ha Lugar la demanda. En su *Sentencia*,[18] el foro primario dio por bien hecha la consignación de $42,570.85, ordenó el pago de esa cantidad más intereses generados al señor Díaz Bueno y dispuso el otorgamiento de la propiedad en controversia a la señora Ríos Pérez mediante la firma de documentos a estos efectos. Adicionalmente, concedió a la demandada honorarios de abogado por la cantidad de $5,000.00. El foro primario no recibió prueba sobre los daños y angustias mentales, por lo que no otorgó la cuantía solicitada por la demandada.

Inconforme, el señor Díaz Bueno presentó su *Reconsideración*.[19] Atribuyó al foro primario errores sustanciales de hecho, derecho y ausencia total de prueba. Señaló que la señora Ríos Pérez incumplió el calendario de pagos escalonados establecidos en un acuerdo de compraventa sobre el bien inmueble en controversia. Recalcó la fecha del 30 de diciembre de 2022 como término final para saldar la deuda. Añadió que la admisión de la demandada sobre los $42,560.85 adeudados, configuró mora e incumplimiento. Indicó que la suma no fue puesta a disposición del demandante previamente y que la demandada consignó en el Tribunal la cantidad adeudada en fecha posterior a la presentación de la demanda de autos, luego de vencida la obligación. Además, apuntaló que la demandada priorizó saldar la deuda hipotecaria, con fecha de vencimiento en el año 2028, antes que efectuar los pagos acordados al señor Díaz Bueno, a pesar de los requerimientos extraoficiales. Puntualizó que, mediante prueba

---

[16] Véase, Entrada 83, SUMAC TPI. *Escrito en Oposición "Moción solicitando se declare bien hecha la consignación del precio pactado de bien inmueble".*
[17] Véase, Entrada 109, SUMAC TPI. *Minuta.*
[18] Véase, Entrada 111, SUMAC TPI.
[19] Véase, Entrada 117, SUMAC TPI.

testifical, "los pagos parciales fueron realizados cuando la demandada quiso, en la forma en que ella quiso y por las cantidades que la demandada mejor entendió". Adicionalmente, adujo que la demandada no presentó evidencia de los pagos realizados al acreedor hipotecario. También, el demandante indicó que tiene derecho a la resolución del contrato y a que se le devuelva la propiedad.

El 8 de diciembre de 2025, notificada al día siguiente, mediante *Resolución interlocutoria*,[20] el foro primario declaró No Ha Lugar la reconsideración.

Insatisfecho aún, el 8 de enero de 2026, el apelante compareció ante nos mediante el recurso de epígrafe e imputó la comisión de los siguientes errores:[21]

> A. Erró el Tribunal de Primera Instancia al realizar determinaciones de hecho claramente erróneas sobre el alegado cumplimiento de la apelada, al concluir que esta "siempre realizó pagos mensuales" y tratar el incumplimiento como un mero atraso, cuando la prueba documental presentada demuestra que la apelada efectuó pagos parciales en más de cuatro (4) años en las cantidades que mejor le pareció, lo cual es incompatible con un patrón de pagos mensuales consecutivos, con suma cierta, según acordado. Lo que acredita un incumplimiento sustancial del calendario pactado.
>
> B. Erró el Tribunal de Primera Instancia al dar por bien hecha la consignación tardía efectuada por la demandada, y convalidarla como si purgara la mora y el incumplimiento.
>
> C. Erró el TPI al determinar que hubo cumplimiento específico por parte de la demandada con la consignación efectuada y ordenar el traspaso forzoso del inmueble, a pesar de que quedó demostrado, y la propia apelada admitió, que no estuvo lista ni contaba con los fondos para comprar el inmueble dentro del término contractual, y que solo obtuvo el dinero después de presentada la demanda mediante un préstamo, por lo que no procedía convertir una consignación extemporánea en "cumplimiento" ni ordenar el traspaso.

---

[20] Véase, Entrada 118, SUMAC TPI.
[21] Véase, Entrada Núm. 1, en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).

D. Erró el Tribunal de Primera Instancia al imponer al demandante el pago de honorarios de abogado a favor de la parte demandada por la suma $5,000.00, sin efectuar determinaciones específicas que sustenten una adjudicación por temeridad ni exponer el fundamento legal aplicable, por lo que dicha partida debe eliminarse.

El 20 de enero de 2026, notificada el día 22 siguiente, esta Curia emitió una *Resolución.*[22] A petición del señor Díaz Bueno,[23] este foro apelativo intermedio ordenó al TPI que remitiera la regrabación de los procedimientos. También, otorgó a la señora Ríos Pérez el término reglamentario para presentar su alegato.

En cumplimiento con lo anterior, el 23 de enero de 2026, el foro primario remitió el audio vía correo electrónico.[24]

Por su parte, el 6 de febrero de 2026, la señora Ríos Pérez presentó su oposición al recurso.[25]

Posteriormente, el 9 de febrero de 2026, el señor Díaz Bueno sometió una copia de la Transcripción de la Prueba Oral (TPO). Certificó que la señora Ríos Pérez fue notificada, más no consignó su estipulación con dicha parte. También, el señor Díaz Bueno expresó *motu proprio* su intención de presentar su alegato suplementario.[26] El 5 de marzo de 2026, el señor Díaz Bueno incoó su *Alegato Suplementario.*

Con el beneficio de ambas comparecencias, resolvemos.

## II.

### A.

Es norma firmemente asentada que, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, las determinaciones de hecho, la apreciación de la prueba testifical y las adjudicaciones de credibilidad realizadas por el juzgador merecen deferencia y respeto por parte de los foros apelativos. *S.L.G. Rivera-Pérez v. S.L.G. Díaz-Doe et al.*, 207 DPR 636,

---

[22] Véase, Entrada 3, SUMAC TA.
[23] Véase, Entrada 2, SUMAC TA.
[24] Véase, Entrada 4, SUMAC TA.
[25] Véase, Entrada 5, SUMAC TA.
[26] Véase, Entrada 6, SUMAC TA.

657 (2021); *González Hernández v. González Hernández,* 181 DPR 746, 776 (2011); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013); *Argüello v. Argüello,* 155 DPR 62, 79 (2001); *Trinidad v. Chade,* 153 DPR 280, 291 (2000). En la revisión de un dictamen en el que desfiló prueba testifical, este tribunal revisor debe conferir la debida deferencia a la apreciación de los hechos efectuada por el juzgador, por ser éste el más idóneo para llevar a cabo esa función. *McConnell v. Palau,* 161 DPR 734, 750 (2004). La determinación de credibilidad del foro sentenciador "es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada ya que él fue quien oyó y vio declarar a los testigos". *Pueblo v. Bonilla Romero,* 120 DPR 92, 111 (1987), citado en *Argüello v. Argüello, supra,* pág. 79. Ello así, porque el juzgador de hechos puede apreciar mejor la forma en que testifican los declarantes, sus comportamientos (*demeanor*) y la totalidad de las circunstancias que acompañan a los testimonios, aspectos que suelen perderse en la letra muda de las actas y expedientes inexpresivos. *Pueblo v. Negrón Ramírez,* 213 DPR 895 (2024); *Rivera-Pérez v. S.L.G. Díaz-Doe et al., supra,* pág. 658; *S.L.G. Rivera Carrasquillo v. AAA,* 177 DPR 345, 356 (2009); *Ramos Acosta v. Caparra Dairy, Inc.,* 113 DPR 357, 365 (1982); *Ortiz v. Cruz Pabón,* 103 DPR 939, 947 (1975).[27] Por lo anterior, las apreciaciones de la prueba y la credibilidad de los testigos no deben ser sustituidas por las del Tribunal de Apelaciones. *Rolón García y otros v. Charlie Car Rental, Inc.,* 148 DPR 420, 433 (1999). Únicamente, cuando del examen de la prueba se desprenda que el juzgador descartó injustificadamente elementos probatorios importantes o fundó su criterio en testimonios improbables o imposibles es que se ha justificado nuestra intervención con la apreciación de la prueba realizada por el foro *a quo. C. Brewer P.R., Inc. v. Rodríguez,* 100 DPR 826, 830 (1972).

---

[27] Véase, además, la Regla 110 de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 110, la cual dispone que un testigo que merezca entero crédito es prueba suficiente de cualquier hecho.

Claro está, cuando las conclusiones de hecho del foro de instancia estén basadas en prueba pericial o documental, los tribunales revisores nos encontramos en la misma posición que el foro impugnado. *González Hernández v. González Hernández, supra,* pág. 777. Por lo tanto, este tribunal intermedio está facultado para adoptar un criterio propio en la apreciación y evaluación de la prueba documental o pericial. *Mun. de Loíza v. Sucns. Suárez et al.,* 154 DPR 333, 363 (2001); *Prieto v. Maryland Casualty Co.,* 98 DPR 594, 623 (1970). En consecuencia, en el caso de un conflicto irreconciliable entre la prueba testifical y la prueba documental, aquellas determinaciones de hecho basadas en estas últimas pueden ser alteradas. *Díaz García v. Aponte Aponte,* 125 DPR 1, 13-14 (1989).

**B.**

Es norma conocida que, bajo la teoría general de obligaciones y contratos,[28] las partes contratantes "pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, la moral, ni al orden público". *Rodríguez García v. UCA,* 200 DPR 929, 943 (2018); Art. 1207 del Cód. Civ. 1930, 31 LPRA ant. sec. 3372. Un contrato existe cuando una o varias partes prestan su consentimiento a obligarse a dar alguna cosa o prestar algún servicio. *Id.,* págs. 726-727; Art. 1206 del Cód. Civ. de 1930, 31 LPRA ant. sec. 3371. El pacto será validado si concurren tres elementos esenciales, a saber: consentimiento, objeto y causa. *Id.,* pág. 727 y la jurisprudencia allí citada; Art. 1213 del Cód. Civ. de 1930, 31 LPRA ant. sec. 3391.

Como se sabe, las obligaciones nacen de la ley, los contratos, los cuasicontratos y los actos y omisiones en que intervengan la culpa o negligencia. *Demeter Int'l v. Srio. Hacienda,* 199 DPR 706, 726 (2018); Art. 1042 del Cód. Civ. de 1930, 31 LPRA ant. sec. 2992. "Las obligaciones que

---

[28] En consideración a que la obligación objeto de controversia se perfeccionó bajo la vigencia del Código Civil de 1930, aplicaremos dicho cuerpo normativo y su jurisprudencia interpretativa al asunto planteado. Ello así, en armonía con el Artículo 1812 del Código Civil de 2020, *Actos y contratos celebrados bajo legislación anterior,* 31 LPRA sec. 11717, que dispone: "Los actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código".

nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos". Art. 1044 del Cód. Civ. de 1930, 31 LPRA ant. sec. 2994. Este principio de *pacta sunt servanda* impone a las partes contratantes la exigencia de cumplir con lo pactado pues supone la inalterabilidad de los acuerdos contenidos en el contrato. *Rodríguez García v. UCA, supra,* pág. 943.

Claro está, existen contratos que exigen la realización de un ejercicio de interpretación a los fines de determinar la naturaleza de la obligación en que incurrieron las partes. *Nissen Holland v. Genthaller,* 172 DPR 503, 513 (2007); *S.L.G. Irizarry v. S.L.G. García,* 155 DPR 713, 725-726 (2001). A tales efectos, el Artículo 1233 del Código Civil de 1930 disponía que: "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquellas". 31 LPRA ant. sec. 3471. Al respecto, el Tribunal Supremo de Puerto Rico ha opinado que debe seguirse la letra clara de un contrato, cuando la misma refleja inequívocamente la voluntad de las partes. Por lo tanto, dicho principio impone a los tribunales que la interpretación conferida a un contrato no le reste efectividad a las cláusulas contractuales que fueron válidamente acordadas. Sin embargo, cuando no sea posible determinar la voluntad de las partes con la mera lectura literal de las cláusulas contractuales, entonces, se deberá recurrir a evidencia extrínseca para juzgarla, utilizando principalmente los actos anteriores, coetáneos y posteriores de los contratantes, el uso o costumbre y demás circunstancias indicativas de la intención contractual, incluyendo la ocasión, circunstancias, personas y el acuerdo que se intentó llevar a cabo. *Nissen Holland v. Genthaller, supra,* págs. 518-519.

### c.

La Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1, permite la imposición de honorarios en caso de que cualquiera de las partes, o su

abogado, procedan con temeridad o frivolidad. En su parte pertinente, el inciso (d) de la mencionada norma establece lo siguiente:

> En caso [de] que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. 32 LPRA Ap. V, R. 44.1 (d).

Nuestro Tribunal Supremo ha definido el concepto de temeridad "**como aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables**". (Énfasis nuestro). *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010). Según lo ha expresado el Tribunal Supremo, la penalidad aspira "disuadir la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa los perjuicios económicos y las molestias producto de la temeridad de la otra parte". *Id.*, pág. 505. La determinación de si una parte obró con temeridad descansa en la sana discreción del juzgador. *P.R. Oil v. Dayco*, 164 DPR 486, 511 (2005). La imposición del pago de honorarios de abogado es imperativa cuando se concluye que una parte incurrió en temeridad. *Id.* En cuanto a los criterios de revisión, por constituir un asunto discrecional del tribunal sentenciador, los foros apelativos solo intervendremos en dicha determinación cuando surja un claro abuso de discreción. *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001).

### III.

En la causa de autos, el señor Díaz Bueno aduce que el foro primario incidió al realizar determinaciones de hecho erróneas. En esencia, el apelante cuestionó que el TPI adjudicara los pagos realizados por la señora Ríos Pérez como meros atrasos y que no determinara un incumplimiento de contrato; el apelante catalogó como tardía la consignación hecha por la demandada en el Tribunal; también, impugnó la orden de traspaso del bien inmueble y la imposición de honorarios de abogado. Por su relación intrínseca, abordamos en conjunto los señalamientos de error.

En la presente causa, la prueba documental y testifical que obra en el expediente sostiene que la apelada comenzó a realizar pagos al apelante para la adquisición del inmueble en controversia en el año 2018, es decir, previo a que las partes suscribieran el acuerdo de pagos calendarizados.[29]

El foro apelado tuvo ante sí un documento con fecha del año 2019, firmado por la señora Ríos Pérez en el 2020, y por el señor Díaz Bueno en el 2021, que recogió ciertos acuerdos sobre la compraventa del inmueble por el precio pactado de **$89,000.00**.[30] Interesantemente, en su *Réplica a "Reconvención"*,[31] el apelante arguyó que el contrato entre las partes no quedó perfeccionado, pero se aferró al calendario y a los abonos que contempla el escrito. El documento quedó estipulado entre las partes. Los balances pendientes y los pagos por el negocio jurídico se otorgarían de la siguiente manera:

[...]

------------CL[Á]USULAS Y CONDICIONES------------

**SEGUNDO:** Constituye el precio de esta compraventa la cantidad ajustada y convenida de **OCHENTA Y NUEVE MIL D[Ó]LARES ($89,000.00)** de cuya suma retiene la compradora la compradora la cantidad de **DIECINUEVE MIL DÓLARES ($19,000.00)** para pagar en su día la hipoteca que grava dicha propiedad y que **LA COMPRADORA** toma de su cuenta y cargo y el balance del precio de venta, o sea la cantidad de **SETENTA MIL D[Ó]LARES ($70,000.00)** lo pagará **LA COMPRADORA** a la fecha de presentación del Pagaré Hipotecario a que se hace referencia más adelante.---------------

**TERCERO: LA COMPRADORA** entra en posesión de la propiedad, si más acto que este otorgamiento.

**CUARTO:** Para evidenciar la deuda ascendiente a **SETENTA MIL D[Ó]LARES ($70,000.00)** la compradora ha otorgado y suscrito ante el Notario Autorizante un Pagaré al Portador de carácter

---

[29] *Id.* Exhibit 5, estipulado. *Recibos de los pagos parciales realizados por Ana Cecilia Ríos Pérez, 10 páginas.* También, véase, Identificación 1 Parte Demandada. *Dos recibos del First Bank del 23 de marzo de 2019, dos recibos del First Bank del 16 de octubre de 2018.* Además, refiérase al audio de la vista del 2 de julio de 2025, minutos 1:51:00-1:57:20.
[30] Véase, Entrada 104, SUMAC TPI. Exhibit 4, estipulado. *Borrador de escritura iniciada y firmada por ambas partes, redactada por el notario José Antonio Lugo Acevedo.* (---*Escritura número veinte --- Compraventa asumiendo hipoteca --- Constitución de hipoteca*). También, refiérase al audio de la vista del 2 de julio de 2025, minutos 0:59:30-1:04:00.
[31] Véase, Entrada 23, SUMAC TPI.

hipotecario, el cual queda garantizado con una hipoteca sobre la propiedad objeto de esta compraventa, que copiado literalmente de su original que tengo a la vista lee como sigue:-------

**PAGAR[É]** VALOR SETENTA MIL D[Ó]LARES ($70,000.00). ------------------------------------------
---VENCIMIENTO: A LA PRESENTACI[Ó]N---------
---Por el valor recibido debo y pagar[é] en dinero de curso legal, al Portador de esta Obligación en su domicilio en la Isla de Puerto Rico la suma principal de SETENTA MIL D[Ó]LARES ($70,000.00). ------------------------------------------
Dicha suma principal no devengará intereses. ---

[...]

---El principal será pagado en **TRES** pagos de **OCHO MIL D[Ó]LARES ($8,000.00)** cada uno, los días treinta (30) de enero de dos mil diecinueve (2019), treinta (30) de diciembre de dos mil veinte (2020) y treinta (30) de diciembre de dos mil veintiuno (2021), y **TRES pagos de DOCE MIL D[Ó]LARES ($12,000.00)** cada uno, los días treinta (30) de mayo de dos mil veinte (2020), treinta (30) de mayo de dos mil veintiuno (2021) y treinta (30) de mayo de dos mil veintidós (2022) y **UN** pago de **DIEZ MIL D[Ó]LARES ($10,000.00)** el día treinta (30) de diciembre de dos mil veintidós (2022).----------------------------
---------------------

[...]

(Énfasis en el original)

Para explicar la obligación de pago de $70,000.00, anteriormente detallada como suma principal, desglosaremos la obligación de pago de $19,000.00, también descrita en el acuerdo.

Según obra en el expediente, el Sr. Ángel Álvarez Lau (señor Álvarez Lau) y el señor el Díaz Bueno figuran, respectivamente, como acreedor y deudor en un acuerdo hipotecario suscrito en el año 2008.[32] En el año 2023, el apelante recibió el Pagaré Hipotecario al Portador original de manos de sus abogadas.[33] Por dicha entrega, solicitaron el desistimiento voluntario con perjuicio de la causa de acción de epígrafe en la que inicialmente incluyeron al acreedor hipotecario, el señor Álvarez Lau.[34] El

---

[32] Véase, Entrada 10, SUMAC TPI. Anejo, *Renuncia del Emplazamiento de [Á]ngel [Á]lvarez Lau y copia del Pagaré*, págs. 3-4.
[33] Refiérase al audio de la vista de 2 de julio de 2025, 0:50:00.
[34] Véase, Entrada 10, SUMAC TPI. *Solicitud de desistimiento con perjuicio*, presentada por el apelante el 30 de marzo de 2023.

apelante y la apelada admitieron sus conversaciones con el señor Álvarez Lau sobre la obligación hipotecaria pendiente.[35] La señora Ríos Pérez declaró que el señor Díaz Bueno le representó que la deuda hipotecaria ascendía a $19,000.00. La apelada alegó ante el TPI que pagó $21,439.15 a favor de la hipoteca suscrita entre el señor Díaz Bueno y el Sr. Álvarez Lau. Dicha cantidad es mayor a los $19,000.00 que expresaba el borrador de escritura como balance pendiente en el negocio que suscribió con el señor Díaz Bueno.[36] El pago benefició al señor Díaz Bueno cuyo pagaré hipotecario original consta bajo su nombre. Ante la entrega del pagaré hipotecario original al deudor, concluimos que el señor Álvarez Lau no alberga ninguna reclamación monetaria en contra de su deudor, el señor Díaz Bueno.

Por lo anterior, concluimos que la señora Ríos Pérez sólo se obligó a pagar los $19,000.00 en el acuerdo suscrito con el señor Díaz Bueno y asumió $2,439.15 en exceso de un negocio original del cual no formó parte. Por dicho pago, coincidimos con el foro primario en acreditar la porción extendida en exceso a la obligación de pago directo al señor Díaz Bueno por el negocio de compraventa.

Justificado lo anterior, evaluaremos el compromiso de pagos escalonados para satisfacer la obligación de pagos directos al señor Díaz Bueno por el monto de $70,000.00, cantidad que no devengaría intereses según el documento suscrito por las partes y el testimonio del apelante.[37]

Según lo alegado en la reclamación,[38] la apelada pagó $25,000.00 directamente al apelante, por lo que el señor Díaz Bueno exigió una diferencia pendiente de $45,000.00.

El señor Díaz Bueno impugnó las consignaciones ascendentes a $42,560.85, realizadas por la señora Ríos Pérez al Tribunal, por considerar el monto como pago tardío, sujeto a mora, y por debajo de lo reclamado.[39]

---

[35] Refiérase al audio de la vista de 2 de julio de 2025, 0:22:00-0:33:30.
[36] Refiérase al audio de la vista de 2 de julio de 2025, 0:15:00-0:22:30.
[37] Refiérase al audio de la vista de 2 de julio de 2025, 1:15:00-1:30:00.
[38] Véase, Entradas 1 y 11, SUMAC TPI. *Demanda* y *Demanda enmendada.*
[39] Véase, Entradas 54 y 93, SUMAC TPI.

La reducción ya ha sido justificada pues respondió al pago en exceso realizado por señora Ríos Pérez, obligación hipotecaria a nombre del señor Díaz Bueno.

En cuanto a la mora, el Tribunal Supremo ha expresado lo siguiente en torno al Código Civil de 1930, aplicable al caso de epígrafe:

> [...] En esencia, según el Art. 1061 del Código Civil de 1930, 31 LPRA ant. sec. 3025, la indemnización en caso de mora consiste en el pago de intereses y, por ende, "[s]i la obligación consistiere en el pago de una cantidad de dinero y el deudor incurriere en mora, la indemnización de daños y perjuicios, no habiendo pactado en contrario, consistirá en el pago de los intereses convenidos, y a falta de convenio, en el interés legal". *Asoc. Salud Primaria y otros v. ELA*, 2025 TSPR 75, 216 DPR ___, 13 (2025). [...]

El Alto Foro también ha reseñado que "[...] La indemnización por intereses moratorios es un derecho personal del acreedor, que puede ser renunciado" [...]. *Consejo Titulares v. MAPFRE*, 2024 TSPR 140, 215 DPR ___, 12 (2024) (citas omitidas). La misma jurisprudencia cita a Castán Tobeñas cuando señala que:

> [...]Los efectos de la mora desaparecen por lo que se llama purga de la misma (purgatio morae). Aunque el Código Civil no la regula, puede decirse que la mora cesa: **1) Por voluntad del acreedor, como en los casos de renuncia al pago de la indemnización debida, concesión de prórroga, novación de la obligación, etc. [. . .] 2) por concesión de un plazo legal al deudor (moratorias)**. **3) Por incurrir también el acreedor en mora (compensatio morae)**. J. Castán Tobeñas, op. sic., pág. 244. *Consejo Titulares v. MAPFRE, supra*. (Énfasis nuestro). [...]

En el caso de autos, el foro primario concluyó lo siguiente:

> "[L]a prueba demostró que el atraso en los pagos no fue por cuenta de Ríos Pérez, quien siempre pagó a plazos desde el 2018. Si bien las cuantías no eran idénticas, los pagos fueron constantes y el [señor] Díaz Bueno siempre se los aceptó."

La evidencia del ritmo de pagos que desfiló en sala,[40] denota que el señor Díaz Bueno otorgó excepciones a los pagos pactados. Prestó anuencia a las excepciones al aceptar los pagos parciales. Por esta anuencia, no

---

[40] Refiérase al audio de la vista de 2 de julio de 2025, 0:47:00-0:50:00; 0:51:00-0:57:00.

ocurrió "incumplimiento sustancial del calendario pactado" y con su acción el apelante obró en contra de la configuración de mora.

Adicionalmente, según el testimonio de la señora Ríos Pérez, ella trató de informarle al señor Díaz Bueno que la deuda hipotecaria había quedado salda. Ella testificó que tuvo que alejarse pues él le profirió palabras soeces y que también el señor Díaz Bueno reiteró su negativa de aceptar el pago pendiente, aunque la representación legal del señor Díaz Bueno cuestionó si la señora Ríos Pérez tenía o no el efectivo al momento del plazo final de pago.[41]

El señor Díaz Bueno expresó que tenía la impresión de que estaba ante un negocio familiar.[42] Las partes comparten un lazo sanguíneo con la procreación de una hija en común, hoy día mujer adulta. Al momento, la cantidad en disputa descansa consignada en el Tribunal. La misma fue negociada sin intereses. Por lo anterior, la suma consignada satisface el acuerdo entre las partes, por lo que se sostiene el traslado de la propiedad ordenado por el foro primario.

Toda vez que la cantidad reclamada lleva consignada en el Tribunal desde el año pasado, la actitud del señor Díaz Bueno al continuar un pleito vivo prolonga innecesariamente esta situación. Por consiguiente, los honorarios de abogado dictados por el TPI por la cantidad de $5,000.00 quedan justificados.

Finalmente, concluimos que el foro primario no incurrió en los errores señalados y su determinación descansa en toda la prueba documental y testifical desfilada ante su sala y el derecho aplicable.

**IV.**

Por los fundamentos expuestos, se confirma la *Sentencia* apelada.

---

[41] Refiérase al audio de la vista de 2 de julio de 2025, 1:46:00-1:48:00, 1:58:00.
[42] Refiérase al audio de la vista de 2 de julio de 2025, 00:23:00-00:30:00.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones